DAVID E. JOHNSON AND MATTIE JOHNSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 111–71.    Filed September 5, 1973.

*Samuel L. Payne*, for the petitioners.
*Robert J. Shilliday, Jr.*, for the respondent.

#### OPINION

FAY, *Judge:* Respondent determined deficiencies in petitioner David E. Johnson's self-employment tax for the taxable years 1967 and 1968 in the amounts of $250.56 and $271.11, respectively. The sole issue for determination is whether income received from the rental of petitioner David E. Johnson's boat sheds constitutes rental income from real estate under section 1402(a)(1) of the Internal Revenue Code of 1954 [1] for purposes of computing petitioner David E. Johnson's self-employment tax under section 1401 for the taxable years in issue.

All of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners David E. Johnson and Mattie Johnson are husband and wife whose residence as of the date the petition herein was filed was

---

[1] Unless otherwise indicated, all section references hereinafter are to the Internal Revenue Code of 1954.

Suwannee, Fla. Petitioners filed joint Federal income tax returns for the years 1967 and 1968 with the district director of internal revenue at Jacksonville, Fla.

Mattie Johnson is a petitioner herein solely by reason of having filed joint Federal income tax returns with her husband during the years in issue. References hereinafter to "petitioner" will be to David E. Johnson.

From 1950 through 1968 petitioner was self-employed in the business of operating a boat marina and fishing camp. Petitioners reported the total earnings from this business as profit from a business on their income tax returns from 1950 to 1965, including the rents received from the rental of petitioner's boat sheds. For the taxable year 1967, petitioners reported $1,311 as a net profit from their fishing camp business and $3,915 as net income from rents received from the rental of boat sheds. For the taxable year 1968 petitioners reported $1,426.44 as net profit from the fishing camp business and $4,236 as net income from rents received from rental of boat sheds. Petitioners reported $1,311 and $1,426.44 as self-employment income for the taxable years 1967 and 1968, respectively.

Petitioner filed an application for retirement insurance benefits on May 27, 1966, upon reaching the age of 65. This application was granted. In June 1969 it was determined by the Social Security Administration that claimant's income from self-employment should be adjusted to $5,226 for 1967 and $5,662.44 for 1968. Because of this determination, petitioner's social security benefits were terminated, and the payments made from April 1966 to December 1968 were considered an overpayment.

On March 3, 1970, petitioner requested a hearing before the Social Security Administration, Bureau of Hearings and Appeals, protesting the determination of the Social Security Administration.

This hearing was held on April 23, 1970. The hearing examiner concluded that petitioner had income from self-employment of $5,226 for 1967 and $5,662.44 for 1968, and, therefore, petitioner was not entitled to social security benefits for those years. This decision became final on October 27, 1970, and was based on the hearing examiner's conclusion that amounts petitioner claimed as rental income were actually business income.

Petitioner then brought an action in the U.S. District Court for the Northern District of Florida, Gainesville, for judicial review of the final decision of the Secretary of the United States Department of Health, Education, and Welfare. On November 9, 1971, Judge David L. Middlebrooks, U.S. district judge, issued an opinion order in the case of *David E. Johnson* v. *Elliot L. Richardson.* The District Court upheld the decision of the Social Security Administration and found

that petitioner's income from his boat marina business was not attributable principally to the occupancy of land, but to the services and facilities provided by petitioner's presence on the site, so that such increments of income were net earnings from self-employment received by petitioner while engaged in a trade or business in the years 1966, 1967, and 1968. The court also observed (1) that although petitioner may have devoted less than 45 hours a month to his trade or business, his services to the business were nonetheless substantial and (2) that petitioner was not retired within the meaning of the social security provisions during the years in issue.

On January 3, 1972, petitioner appealed the decision of the District Court to the U.S. Court of Appeals for the Fifth Circuit. On June 29, 1972, the Fifth Circuit affirmed the decision of the District Court in a per curiam opinion.

Petitioner began building sheds for the storage of boats in 1956, and during 1967 and 1968 petitioner had facilities available for mooring about 60 boats.

Adjacent to the boat sheds is a small store operated by petitioners in which petitioners sell such items as fishing tackle, cigarettes, cold drinks, candy, and crackers.

There are also two gasoline pumps located at the store. During 1967 and 1968 petitioners sold gasoline, oil, fishing tackle, and other sundry items to the owners of the boats who rented mooring space under the boat sheds and to various passers-by.

Petitioners lived in a house trailer which was located very close to the boat sheds and the store during the years in question.

Petitioner received from $5 to $15 per month for the rental of each boat stall under oral agreements usually on a yearly basis.

Petitioner provided the following services to the owners of boats who rented space under his boat sheds: (1) Providing of gas and oils; (2) selling of sundry items at petitioners' store; (3) making arrangements for others to repair the boat owners' boats and motors; (4) recharging of batteries; (5) loaning of boat paddles, cushions, and other gear useful in the operation of boats; (6) providing fishing tips; and (7) checking daily for overdue boats and reporting the overdue boats to the local conservation department.

Petitioner did not receive separate consideration for many of the above-enunciated services.

Petitioner managed the store, boat sheds, and gasoline pumps in 1967 and 1968.

The services which petitioner rendered to the boat owners are not those usually or customarily rendered in connection with the mere rental of mooring space at a boat shed.

The question presented for our consideration is whether income

derived by petitioner from the rental of boat space during the years in issue constituted income from the rental of real estate within the meaning of section 1402(a)(1) for purposes of computing petitioner's self-employment tax liability under section 1401.

Section 1.1402(a)–4(c)(2), Income Tax Regs.,[2] provides that if services other than those usually or customarily rendered in connection with the rental of rooms or space are rendered to the occupant, the payments for the use or occupancy of the rooms or space do not constitute rentals from real estate.

Although the instant issue is an income tax determination, an analogous issue exists under comparable provisions of the Social Security Act[3] and the accompanying Social Security Administration Regulations[4] for purposes of deciding whether a claimant's income from rental activities is the type of income which would entitle him to benefits under the social security system.

Since the old age, survivor, and disability insurance provisions of the Social Security Act were enacted to protect workers and their dependents from the risk of loss of income due to the worker's old age, death, or disability, the courts have concluded that Congress intended that the coverage provisions of the Social Security Act should be construed in such a manner as to insure maximum coverage. Accordingly, the rental exclusion contained in section 411(a) of the Social Security Act and the accompanying regulation (i.e., section 404.1053(d)(2), Social Security Administration Regulations), has been strictly construed to prevent this exclusion from interfering with the congressional purpose of effectuating maximum coverage under the social security umbrella. See *Delno* v. *Celebrezze*, 347 F. 2d 159, 165 (C.A. 9, 1965), wherein the Ninth Circuit stated as follows:

> The record indicates that the Appeals Council applied the "services to occupant" exception narrowly, and included borderline items in the rental exclusion. The general statutory preference for coverage would seem to require the opposite approach. Moreover, there is specific evidence that Congress intended the rental exclusion to be narrowly restricted to payments for occupancy only. These considerations, as well as the general purposes of the Act, dictate that any service not clearly required to maintain the property in condition for occupancy be

---

[2] Sec. 1.1402(a)–4 Rentals from real estate.

(c)(2) *Services rendered for occupants.* Payments for the use or occupancy of rooms or other space where services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist camps or tourist homes, or payments for the use or occupancy of space in parking lots, warehouses, or storage garages, do not constitute rentals from real estate; consequently, such payments are included in determining net earnings from self-employment. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. * * *

[3] See 42 U.S.C. sec. 411(a).

[4] See sec. 404.1053(d)(2), Social Security Administration Regs., which contains comparable language to sec. 1.1402(a)–4(c)(2), Income Tax Regs.

considered work performed for the tenant, and not for the conservation of invested capital. [Footnote omitted.]

See also *Rasmussen* v. *Gardner*, 374 F. 2d 589, 594–595 (C.A. 10, 1967); *Celebrezze* v. *Kilborn*, 322 F. 2d 166, 168 (C.A. 5, 1963); *Koeller* v. *Finch*, 315 F. Supp. 533, 543 (D.C. Kan. 1970).

We are persuaded that the rental exclusion contained in section 1402(a)(1) and in section 1.1402(a)–4(c)(2), Income Tax Regs., should likewise be narrowly construed. This not only promotes a symmetrical parallel between the social security eligibility provisions for self-employed persons and the corresponding income tax provisions for taxing self-employed persons for social security purposes, but also enhances the congressional policy of insuring that the optimum number of potentially eligible persons will be provided for under the social security provisions in the event of their ultimate dependency. See *William E. Palmer*, 52 T.C. 310, 314 (1969).

It appears that petitioner was separately paid for gas, oil, fishing tackle, and sundry items which he sold to the boat owners. But additionally, petitioner rendered such gratuitous services as the providing of fishing tips and information, the checking for overdue boats and the reporting of overdue boats to the responsible local officials, the loaning of paddles and other gear, the availability of battery recharge service, and the providing for others to perform repair functions, which were clearly not essential for the conservation of petitioner's invested capital. These services, within the meaning of section 1.1402(a)–4(c)(2), Income Tax Regs., are primarily for the convenience of the boat shed occupants and are other than those usually or customarily rendered in connection with the rental of boat shed space. We have therefore concluded that petitioner's income from the rental of his boat sheds during the years in issue did not constitute rentals from real estate for self-employment tax purposes.

Respondent contends that petitioner should be collaterally estopped from raising the issue of whether the boat shed rentals constituted rentals for self-employment tax purposes due to the Health, Education, and Welfare determination which was affirmed subsequently pursuant to judicial review by the appropriate appellate forums. However, since we have disposed of the self-employment tax issue on the substantive merits in respondent's favor, we do not find it necessary to consider the collateral estoppel argument.

*Decision will be entered for the respondent.*