T.C. Memo. 1995-571


UNITED STATES TAX COURT


LEE MIZELL AND PEARLENE MIZELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18516-93.               Filed November 29, 1995.


<u>Jeffrey H. Dixon</u>, for petitioners.

<u>Lloyd E. Mueller</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' 1988, 1989, and 1990 Federal income taxes in the amounts of $160, $3,624, and $3,343, respectively.  After concessions,[2] the issue for decision is whether rental income derived from certain agricultural leases constitutes net earnings from self-employment.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.  During the years in issue, petitioners were husband and wife and filed joint Federal income tax returns.  At the time the petition was filed, petitioners resided in Gould, Arkansas.  References to petitioner are to Lee Mizell.

Petitioner listed his occupation as "farmer" on his 1988, 1989, and 1990 Federal income tax returns.  He has been engaged in the production of agricultural commodities as a farmer most of his adult life.

Over a period of years, petitioner purchased agricultural land in Lincoln County, Arkansas.  Specifically, petitioner purchased 55 acres in 1978, 50 acres in 1979, 500 acres in 1986, and 35 acres in 1988.  Additionally, petitioner leased

---

[2]Petitioners conceded the correctness of adjustments for auto depreciation in the amounts of $10,310, $496, and $298 for the years 1988, 1989, and 1990, respectively.

agricultural land from third parties. Petitioner was the owner or lessee of 731 acres of cultivated acreage in Lincoln County (the property) during the years in issue. Prior to the years in issue, petitioner farmed the property as a sole proprietor producing cotton, rice, and soybeans, and included the income from his farming activities in the computation of his net earnings from self-employment.

In 1986, petitioner formed a partnership (Mizell Farm) with his three sons. The purpose of Mizell Farm was to conduct farming operations. Petitioner held a 25-percent ownership interest in the partnership. The partnership agreement provided that each of the partners would have an equal voice in the management and conduct of the partnership business, and required that each partner devote his full time and attention to the business. In accordance with the partnership agreement, petitioner made management decisions, acquired operating capital, and contributed physical labor to the farming operation during the years 1988, 1989, and 1990. Petitioner included his distributive share of the partnership's income in his income on his Federal income tax returns for each of the years in issue and treated such income as net earnings from self-employment.

On January 1, 1988, petitioner entered into a series of agricultural leases (leases) wherein petitioner leased the 731 acres of property to Mizell Farm in return for a one-quarter crop share. During the years in issue, petitioner and his three sons

farmed the property and produced cotton, rice, and soybeans as partners in Mizell Farm pursuant to the leases that Mizell Farm had entered into with petitioner.  Mizell Farm was responsible for all of the expenses related to raising and harvesting the crops.  Petitioner derived rental income for each of the years in issue pursuant to the leases.  The actual amount of the rental income received was based upon the level of sales of the agricultural products by the partnership.  Although petitioner included in his income the rents received pursuant to the leases, he did not treat such income as earnings from self-employment.

As of the date of trial, petitioner had not leased the property to a non-related entity or person.

OPINION

Section 1401 provides that, in addition to other taxes, a tax shall be imposed on the self-employment income of every individual.  Generally, rentals from real estate are excluded from the computation of net earnings from self-employment.  Sec. 1402(a)(1).  There is an exception to the exclusion, however, with respect to:

> any income derived by the owner or tenant of land if
> (A) such income is derived under an arrangement,
> between the owner or tenant and another individual,
> which provides that such other individual shall
> produce agricultural * * * commodities (including
> livestock * * *) on such land, and that there shall be
> material participation by the owner or tenant * * * in the
> production or the management of the production of such
> agricultural * * * commodities, and (B) there is material
> participation by the owner or tenant * * * with respect to

any such * * * commodity * * * [Sec. 1402(a)(1); emphasis added.]

In other words, if the rental income is derived under an arrangement which provides for the production of agricultural products on the land of the owner or tenant (the owner) and further obligates the owner to materially participate in the production or the management of the production of agricultural commodities, and the owner actually materially participates in the production or the management of the production of agricultural commodities, then the rental income received by the owner pursuant to the arrangement is considered earnings from self-employment. See sec. 1.1402(a)-4(b)(3)(i), Income Tax Regs. The parties do not dispute this proposition. They further agree if one or more of the above elements is missing, the rental income would be excluded from the definition of self-employment income.

In this case, the parties have stipulated that the leases provide for the production of agricultural products on the property by the partnership, that agricultural products were produced on the property by the partnership during the years in issue, and that petitioner materially participated in the production of the agricultural products. Further, petitioner agrees that as a partner in Mizell Farm, he was obligated to materially participate in the production of agricultural products on his property. Notwithstanding the above, petitioners take the

position that the arrangement with respect to the production of agricultural products did not provide for material participation by petitioner, and therefore, the rental income cannot be considered self-employment income. Respondent disagrees and argues that the arrangement did provide for petitioner's material participation.

There apparently is no dispute between the parties that petitioner's conduct in connection with the production of agricultural products on his property constituted material participation within the meaning of the statute and regulations. There is also apparently no dispute that as a result of the partnership agreement and the general understanding with his sons, petitioner was obligated and expected to "materially participate" in the production of agricultural products on his property. It seems that the dispute between the parties focuses upon the construction of the word "arrangement" as used in section 1402(a)(1) and the corresponding regulations, and further upon the extent of the obligations imposed upon petitioner pursuant to the leases.

Petitioners argue that the leases provide the exclusive basis for determining the terms of the arrangement regarding the production of agricultural products on petitioner's property. Petitioners further argue that the leases impose no obligation on petitioner to materially participate in the production of agricultural products on the property. Although not expressly

stated as such, the thrust of petitioners' position is that the word "arrangement" connotes some form of contractual relationship, the terms and conditions of which must be set forth in a single contract. Respondent takes the position that the word "arrangement" should be construed to take into account the entire understanding between petitioner and his sons (operating through Mizell Farm) with respect to the farming operations conducted on the property. According to respondent, the partnership agreement, which petitioner agrees obligates him to materially participate in the production of agricultural products on the property, must be considered along with the leases in establishing the terms of the arrangement. Respondent further argues that even if the arrangement is limited to the leases, the leases provide for the material participation of petitioner as a partner in Mizell Farm.

Although nowhere defined in the Internal Revenue Code, the word "arrangement" appears in more than 90 sections. Where a word used in a statute is not specifically defined, we apply the language's plain, obvious, and rational meaning. American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982); United States v. Merriam, 263 U.S. 179, 187-188 (1923). The word "arrangement" is defined as an agreement. Webster's Third New International Dictionary 120 (1993). While the concept of an agreement certainly includes a contractual agreement, it is a broader concept that would also include other forms of agreements not

necessarily arising from strict contractual relationships. Consistent with its dictionary definition, in most of the instances where it is used in the Internal Revenue Code, the word "arrangement" refers to some general relationship or overall understanding between or among parties in connection with a specific activity or situation.  Generally, it is not limited only to contractual relationships, or used in a way that suggests that its terms and conditions must be included in a single agreement, contractual or otherwise.  Congress obviously recognized a distinction between a contract and the broader concept of an "arrangement", as is evident from those sections of the Internal Revenue Code that make reference to both.[3]  In those sections where only a contractual relationship is contemplated, "arrangement" is modified by the word "contractual".[4]

---

[3]  See, e.g., sec. 401(a)(30) (dealing with employee benefit plans), which includes the following language:  "all other plans, contracts, or arrangements"; sec. 4003(d) (dealing with excise taxes on vehicles, parts and accessories), which includes the following language:  "In the case of a contract, sale, or arrangement"; sec. 4975(d)(2) (dealing with excise taxes on prohibited transactions), which includes the following language: "any contract, or reasonable arrangement"; and sec. 7701(e)(3) (a definitional section), which includes the following language: "Special rules for contracts or arrangements involving solid waste disposal, energy, and clean water facilities."

[4]  See, e.g., sec. 465(c)(6)(B) (pertaining to the rules applicable with respect to accounting periods), which includes the following language:  "The term 'equipment leasing' does not include the leasing of master sound recordings, and other similar contractual arrangements"; and sec. 4216(b)(5)(B) (dealing with excise taxes on containers), which includes the following language:  "the lowest price shall be determined * * * without
(continued...)

In examining the arrangement with respect to the production of agricultural products on petitioner's property, therefore, we look not only to the obligations imposed upon petitioner by the leases, but to those obligations that existed within the overall scheme of the farming operations which were to take place on petitioner's property. These include petitioner's obligations as a partner in Mizell Farm pursuant to the partnership agreement, as well as the general understanding between petitioner and his sons with respect to the production of agricultural products on his property. Viewed in this manner, the arrangement provided, or contemplated, that petitioner was to materially participate in the production of agricultural products on the property.

Based upon the record as a whole, we find that petitioner and his sons understood and contemplated that petitioner was to "engage to a material degree in the physical work related to the production of * * * [agricultural] commodities" on his property. Sec. 1.1402(a)-4(b)(3)(ii), Income Tax Regs. The partnership agreement required him to do so, as he concedes, and the leases in turn contemplated that he, as a member of the partnership, would materially participate in such production. We further find, taking into consideration the leases, the partnership agreement and the general understanding between the petitioner

[4](...continued)
including any fixed amount to which the purchaser has a right as a result of contractual arrangements existing at the time of sale."

and his sons, that the rents were received by petitioner in connection with an arrangement that provided for petitioner's material participation in the production of agricultural products on his property.  Accordingly, the rental income from the agricultural leases is included in petitioner's net earnings from self-employment pursuant to section 1402(a)(1) for each of the years in issue.

Because of our construction of the word "arrangement" as used in section 1402(a)(1), we need not consider whether the leases, in and of themselves, provided for petitioner's material participation in the production of agricultural products on the property.

To reflect the foregoing,

Decision will be entered

for respondent.