T.C. Memo. 1999-256


UNITED STATES TAX COURT


VINCENT E. & JUDY BOT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7970-98.                    Filed August 3, 1999.


<u>Garry A. Pearson</u> and <u>Jon J. Jensen</u>, for petitioners.

<u>Blaine C. Holiday</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.  All section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Respondent determined deficiencies in petitioners' 1993, 1994, and 1995 Federal income taxes in the amounts of $2,106, $2,204, and $2,223, respectively.

The sole issue for decision is whether rental payments received by petitioner Judy Bot (Mrs. Bot) from petitioner Vincent E. Bot (Mr. Bot) are includable in Mrs. Bot's net earnings from self-employment under section 1402(a)(1) and thus subject to self-employment taxes.

Some of the facts have been stipulated and are so found. Petitioners resided in Minnesota at the time the petition was filed.

Mr. and Mrs. Bot have farmed for approximately 38 years. During the taxable years at issue, Mr. Bot operated a 460-acre crop and livestock farm as a sole proprietorship in Minneota, Minnesota. Mr. Bot owned 160 acres of the farm. Mr. Bot rented the remaining 300 acres of the farm, under cash rental agreements at approximately $90 per acre, from Mrs. Bot and Bruce B. Bot. During the taxable years at issue, Mr. Bot rented 240 acres of farmland from Mrs. Bot for $90 per acre for a total of $21,600 per year.

Mrs. Bot owned the farmland in her own name. She inherited one-eighth of the farmland from her parents, and purchased the remaining seven-eighth from her siblings sometime about 1974.

Soon thereafter Mr. Bot entered into an oral agreement to lease the farmland from Mrs. Bot. When petitioners entered into this oral agreement, petitioners expected that Mrs. Bot would perform the duties she had been performing in the farming operations.

Since Mr. and Mrs. Bot began farming, Mrs. Bot has provided general farming services to the endeavor. This includes raising livestock, farrowing, nursing, cleaning and moving pigs, operating machinery in the farm yard and in field work, and harvesting and bailing crops, on the farm. She drives a tractor mowing, moving snow, and dragging a disk. She also drives the bailer tractor. Mrs. Bot hauls grain to the bins during the wheat harvest. She drives to town to pick up parts and supplies. Mrs. Bot did not participate in planting, weeding, or spraying crops. Mrs. Bot worked on the farm approximately 1,862 hours per year.

In 1992, Mrs. Bot entered into a purported Employment Agreement (Agreement) with Mr. Bot. The Agreement said Mrs. Bot was to perform various farming services, including raising livestock, operating machinery, and picking up supplies. In essence, the Agreement memorialized almost the same duties that Mrs. Bot had been performing since Mr. and Mrs. Bot began farming together. The Agreement also said Mrs. Bot could participate in her husband's medical insurance and medical reimbursement plans.

Mrs. Bot would have continued to do the same farming jobs even if there were no Agreement.

For all 3 years in issue, petitioners filed their Forms 1040 income tax returns on a married, filing jointly basis. On their Schedules E, Supplemental Income and Loss, petitioners reported that Mrs. Bot received net rental income in the amounts of $17,825, $18,079 and $18,211 in 1993, 1994, and 1995, respectively. On line 7, Wages, salaries, tips, etc., of their Forms 1040, petitioners reported that Mrs. Bot received wages in the amounts of $15,074, $15,165, and $15,296 for 1993, 1994, and 1995, respectively. The identical amounts reported as wages were deducted as labor hired on the respective Schedules F, Profit or Loss From Farming, for the years in issue. Mr. Bot failed to withhold Federal income taxes, State income taxes, Federal Insurance Contribution Act taxes, and Medicare tax for all 3 years.

In the notice, respondent, inter alia, determined that the real estate rental payments Mrs. Bot received from Mr. Bot during the taxable years at issue are includable in Mrs. Bot's net earnings from self-employment under section 1402(a)(1), and thus subject to self-employment tax. Respondent also allowed petitioners a deduction for one-half of the self-employment taxes imposed for the taxable years at issue.

On the Forms 4797, Sales of Business Property, attached to their returns, Mr. and Mrs. Bot reported gains from the sales of sows in 1993, gains from sales of sows in 1994, losses from sales of gilts and boars in 1994, and losses form the sale of boars in 1995.  One of the adjustments to their income which is not in issue was that Mr. and Mrs. Bot each received Minnesota Corn Processors Income.

OPINION

Section 1401 provides that a tax shall be imposed on the self-employment income of every individual.  Generally, rentals from real estate are excluded from the computation of net earnings from self-employment.  Sec. 1402(a)(1).  However, section 1402(a)(1) also provides that rentals derived by the owner or tenant of land are not excluded from the computation of net earnings from self-employment if:

> (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural * * * commodities (including livestock * * *) on such land, and that there shall be material participation by the owner or tenant * * * in the production or the management of the production of such agricultural * * * commodities, and (B) there is material participation by the owner or tenant * * * with respect to any such agricultural * * * commodity;

In other words, as the regulations provide in pertinent part, if the rental income is derived under an arrangement between the owner of land (owner) and another person which

provides that such other person shall produce agricultural commodities on such land, and that there shall be material participation by the owner in the production or the management of the production of such agricultural commodities, and there is such material participation by the owner, then the rental income received by the owner pursuant to the arrangement is considered earnings from self-employment. Sec. 1.1402(a)-4(b), Income Tax Regs. Such income is characterized as "includible farm rental income". Id.

In determining whether compensation is includable in self-employment income under sections 1401-1403 such provisions are to be broadly construed so as to favor coverage for Social Security purposes. Braddock v. Commissioner, 95 T.C. 639, 644 (1990). The rental exclusion in section 1402(a)(1) is to be strictly construed to prevent this exclusion from interfering with the congressional purpose of effectuating maximum coverage under the Social Security umbrella. Johnson v. Commissioner, 60 T.C. 829, 832 (1973).

Petitioners contend that the oral lease agreement does not require material participation by Mrs. Bot in the farming operations. Petitioners further contend that the rental income that Mrs. Bot received from Mr. Bot was rental from real estate, and therefore should be excluded in determining whether Mrs. Bot

had any net earnings from self-employment as that term is used in section 1402(a)(1).

In light of all the facts and circumstances, we must decide whether Mrs. Bot received rental income from Mr. Bot pursuant to an "arrangement" between the parties to produce agricultural commodities on the farm within the meaning of section 1402(a)(1)(A).

In Mizell v. Commissioner, T.C. Memo. 1995-571, this Court explained that:

> The word "arrangement" is defined as an agreement.
> Webster's Third New International Dictionary 120 (1993).
> While the concept of an agreement certainly includes a
> contractual agreement, it is a broader concept that would
> also include other forms of agreements not necessarily
> arising from strict contractual relationships.  Consistent
> with its dictionary definition, in most of the instances
> where it is used in the Internal Revenue Code, the word
> "arrangement" refers to some general relationship or overall
> understanding between or among parties in connection with a
> specific activity or situation.  Generally, it is not
> limited only to contractual relationships, or used in a way
> that suggests that its terms and conditions must be included
> in a single agreement, contractual or otherwise.  Congress
> obviously recognized a distinction between a contract and
> the broader concept of an "arrangement", as is evident from
> those sections of the Internal Revenue Code that make
> reference to both.  * * *

The parties stipulated that Mr. Bot used the farmland to produce agricultural commodities such as livestock and crops. With respect to whether under the arrangement Mrs. Bot was to materially participate in the farming operations, we look not only to the obligations imposed upon Mrs. Bot by the oral lease,

"but to those obligations that existed within the <u>overall scheme</u> of the farming operations which were to take place" on Mrs. Bot's property. <u>Mizell v. Commissioner</u>, T.C. Memo. 1995-571. (Emphasis supplied.) These include Mrs. Bot's obligations as a longstanding participant in the farming business as well as the "general understanding between * * * [Mr. Bot and Mrs. Bot] with respect to the production of agricultural products". <u>Id.</u> Viewed in this light, the arrangement between Mr. and Mrs. Bot provided, or contemplated, that Mrs. Bot materially participate in the production of agricultural commodities on the farmland.

Mr. Bot claimed he made all the management decisions and, despite 38 years of history to the contrary, asserted that he could operate his farm without help from his wife. Under these circumstances, we are not required to accept the self-serving testimony of Mr. Bot as gospel. <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986). Although petitioners contend that the purported oral lease agreement did not require Mrs. Bot to materially participate in the farming operations, the record supports a finding that Mrs. Bot played a material role in the production of agricultural commodities under an arrangement with her husband.

For about 38 years through the taxable years at issue, Mrs. Bot performed general farming services on the farm on a regular and intermittent basis, as we detailed in the findings of fact.

Petitioners admitted that in addition to farrowing and other activities concerning their swine, Mrs. Bot operated farm machinery, harvested and bailed crops, and picked up supplies on a semiweekly basis. As noted, Mrs. Bot worked on the farm approximately 1,862 hours per year. We deem it immaterial that Mrs. Bot also purportedly was paid a salary for her services with a corresponding deduction taken on their tax returns. In our view, these "regularly performed services are material to the production of an agricultural commodity, and the intermittent services performed are material to the production operations to which they relate." Sec. 1.1402(a)-4(b)(6) Example (1), Income Tax Regs.

The regulations provide in pertinent part, that if the rental income is derived under an arrangement between the owner of land and another person which provides that such other person shall produce agricultural commodities on such land, and that there shall be material participation by the owner in the production or the management of the production of such agricultural commodities, and there is such material participation by the owner, then the rental income received by the owner pursuant to the arrangement is considered earnings from self-employment. Sec. 1.1402(a)-4(b), Income Tax Regs. Accordingly, we find that the rental income is includable farm rental income that is part of Mrs. Bot's net earnings from self-

employment under section 1402(a)(1) for each of the taxable years at issue.

We have considered all of the arguments presented by the parties, and, to the extent not discussed above, they are without merit or not relevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.