T.C. Memo. 1999-306

UNITED STATES TAX COURT

JOHN P. & TERESA HENNEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7535-98.                    Filed September 16, 1999.

<u>Garry A. Pearson</u> and <u>Jon J. Jensen</u>, for petitioners.

<u>Blaine C. Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PAJAK, <u>Special Trial Judge</u>:  Respondent determined
deficiencies in petitioners' 1994, 1995, and 1996 Federal income
taxes in the amounts of $1,583, $1,562, and $1,551, respectively.
All section references are to the Internal Revenue Code in effect
for the years in issue.  All Rule references are to the Tax Court
Rules of Practice and Procedure.

The sole issue for decision is whether rental payments received by petitioner Teresa Hennen (Mrs. Hennen) from petitioner John P. Hennen (Mr. Hennen) are includable in Mrs. Hennen's net earnings from self-employment under section 1402(a)(1) and thus subject to self-employment taxes.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Minnesota at the time the petition was filed.

Mr. and Mrs. Hennen have farmed for 38 years since they have been married. During the taxable years at issue, Mr. Hennen conducted farming operations in Lyon County, Minnesota. He had a diversified farm and raised cattle, hogs, corn, soybeans, alfalfa, and wheat. Mr. Hennen operated the farm as a sole proprietorship, but he actually farmed with his and Mrs. Hennen's two sons. The farm was 1100 acres in area. Their house and a house occupied by a son and his wife were on the farm premises.

Mr. Hennen owned about 320 acres, and Mrs. Hennen owned 200 acres. The other acreage is rented from others. Mr. Hennen rented the 200 acres of farmland from Mrs. Hennen for $16,000 per year under an oral agreement. Mr. Hennen paid her $80 an acre, which is comparable to the amount he paid to others. Mr. Hennen used the land rented from Mrs. Hennen in the farming operations to produce agricultural commodities such as livestock and crops.

Mrs. Hennen owned the 200 acres in her own name. She purchased the 200 acres from her Uncle in 1972. Mr. Hennen then entered into an oral arrangement to lease the acreage from Mrs. Hennen. Mrs. Hennen deposits the rent received from her husband in her farm account which is separate from his account. When petitioners entered into the oral agreement, petitioners expected that Mrs. Hennen would perform the duties she had been performing in the farming operations.

Since Mr. and Mrs. Hennen began farming, Mrs. Hennen has provided general farming services to the endeavor. She bought cattle, loaded cattle, and vaccinated cattle. She cleaned shop. She also sprayed weeds, picked up parts, unloaded grain, and drove a tractor. In addition, Mrs. Hennen performed the farm bookkeeping. Mrs. Hennen carried on these duties prior to renting the land to her husband. Mrs. Hennen did whatever it took to make the farm run more smoothly and had done so ever since Mr. Hennen and Mrs. Hennen were married 38 years ago. Mrs. Hennen worked on the farm approximately 1,000 hours per year.

Mrs. Hennen did not participate in making decisions as to the type of crop to plant, nor did she participate in other management decisions. Mr. Hennen made the management decisions.

In each of the years in issue, Mrs. Hennen entered into a purported Employment Agreement (Agreement) with Mr. Hennen. The Agreement said that with respect to Mr. Hennen's business of

farming, Mrs. Hennen was to perform bookkeeping, run errands for the business, and help with livestock chores and field work. In essence, the Agreement memorialized almost the same duties that Mrs. Hennen had been performing since Mr. and Mrs. Hennen began farming together. The Agreement also said Mrs. Hennen could participate in her husband's Health and Accident Insurance Plan, according to the terms and provisions of that plan. Mrs. Hennen would have continued to do the same farming jobs even if there had been no Agreement.

For all 3 years in issue, petitioners filed their Forms 1040 income tax returns on a married, filing jointly basis. On their Schedules E, Supplemental Income and Loss, petitioners reported that they received net rental income for 1994, 1995, and 1996, from "FARM AND HOUSE", "FARMS", and "FARMS", respectively, in the amounts of $14,322, $12,940, and $12,766, respectively. On line 7, Wages, salaries, tips, etc., of their Forms 1040, petitioners reported that Mrs. Hennen received wages from Mr. Hennen in the amounts of $3,137.11, $3,250, and $3,487 for 1994, 1995, and 1996, respectively, and, in 1994, petitioners also reported that Mrs. Hennen received wages from World Book, Inc. in the amount of $221.45. The amounts deducted as labor hired on the respective Schedules F, Profit or Loss From Farming, for the 3 years in issue exceeded the amounts purportedly paid to Mrs. Hennen. Mr. Hennen failed to withhold Federal income taxes, State income

taxes, Federal Insurance Contribution Act taxes, and Medicare tax for all 3 years.

In the notice of deficiency, respondent, inter alia, determined that the real estate rental payments Mrs. Hennen received from Mr. Hennen during the taxable years at issue are includable in Mrs. Hennen's net earnings from self-employment under section 1402(a)(1), and thus subject to self-employment tax. Respondent also allowed petitioners a deduction for one-half of the self-employment taxes imposed for the taxable years at issue.

On the Forms 4797, Sales of Business Property, attached to their returns, Mr. and Mrs. Hennen reported gains of $24,046 from a sale of 78 acres in 1994, and "0" gains from the sale of a sprayer in 1995.

OPINION

Section 1401 provides that a tax shall be imposed on the self-employment income of every individual. Generally, rentals from real estate are excluded from the computation of net earnings from self-employment. Sec. 1402(a)(1). However, section 1402(a)(1) also provides that rentals derived by the owner or tenant of land are not excluded from the computation of net earnings from self-employment if:

> (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural * * *

commodities (including livestock * * *) on such land, and that there shall be material participation by the owner or tenant * * * in the production or the management of the production of such agricultural * * * commodities, and (B) there is material participation by the owner or tenant * * * with respect to any such agricultural * * * commodity;

In other words, as the regulations provide in pertinent part, if the rental income is derived under an arrangement between the owner of land (owner) and another person which provides that such other person shall produce agricultural commodities on such land, and that there shall be material participation by the owner in the production of such agricultural commodities, and there is such material participation by the owner, then the rental income received by the owner pursuant to the arrangement is considered earnings from self-employment. Sec. 1.1402(a)-4(b), Income Tax Regs.  Such income is characterized as "includible farm rental income".  Id.

In determining whether compensation is includable in self-employment income under sections 1401-1403 such provisions are to be broadly construed to favor coverage for Social Security purposes.  Braddock v. Commissioner, 95 T.C. 639, 644 (1990). The rental exclusion in section 1402(a)(1) is to be strictly construed to prevent this exclusion from interfering with the congressional purpose of effectuating maximum coverage under the Social Security umbrella.  Johnson v. Commissioner, 60 T.C. 829, 832 (1973).

Petitioners contend that the oral lease agreement does not require material participation by Mrs. Hennen in the farming operations.  Petitioners further contend that the rental income that Mrs. Hennen received from Mr. Hennen was rental from real estate, and therefore should be excluded in determining whether Mrs. Hennen had any net earnings from self-employment as that term is used in section 1402(a)(1).

In light of all the facts and circumstances, we must decide whether Mrs. Hennen received rental income from Mr. Hennen pursuant to an "arrangement" between the parties to produce agricultural commodities on the farm within the meaning of section 1402(a)(1)(A).

In Mizell v. Commissioner, T.C. Memo. 1995-571, this Court explained that:

> The word "arrangement" is defined as an agreement. Webster's Third New International Dictionary 120 (1993). While the concept of an agreement certainly includes a contractual agreement, it is a broader concept that would also include other forms of agreements not necessarily arising from strict contractual relationships.  Consistent with its dictionary definition, in most of the instances where it is used in the Internal Revenue Code, the word "arrangement" refers to some general relationship or overall understanding between or among parties in connection with a specific activity or situation.  Generally, it is not limited only to contractual relationships, or used in a way that suggests that its terms and conditions must be included in a single agreement, contractual or otherwise.  Congress obviously recognized a distinction between a contract and the broader concept of an "arrangement", as is evident from those sections of the Internal Revenue Code that make reference to both.  * * *

The parties stipulated that Mr. Hennen used the land rented from Mrs. Hennen in the farming operations to produce agricultural commodities such as livestock and crops. With respect to whether under the arrangement Mrs. Hennen was to materially participate in the farming operations, we look not only to the obligations imposed upon Mrs. Hennen by the oral lease, "but to those obligations that existed within the <u>overall</u> <u>scheme</u> of the farming operations which were to take place" on Mrs. Hennen's property. <u>Mizell v. Commissioner</u>, T.C. Memo. 1995-571. (Emphasis supplied.) These include Mrs. Hennen's obligations as a longstanding participant in the farming business as well as the "general understanding between * * * [Mr. Hennen and Mrs. Hennen] with respect to the production of agricultural products". <u>Id.</u> Viewed in this light, the arrangement between Mr. and Mrs. Hennen provided, or contemplated, that Mrs. Hennen materially participate in the production of agricultural commodities on the farmland.

Mr. Hennen claimed he made all the management decisions. He acknowledged that he had farmed with his wife for 38 years. Mr. Hennen candidly stated in the answer to the following question:

Respondent: Q  And in fact, she does materially participate and help out and pull her share.

Mr. Hennen: A  If you are familiar with the farm, sir, that's what makes a farm successful. Everybody carries their weight.

Although petitioners contend that the purported oral lease agreement did not require Mrs. Hennen to participate materially in the farming operations, the record supports a finding that Mrs. Hennen played a material role in the production of agricultural commodities under an arrangement with her husband.

For 38 years through the taxable years at issue, Mrs. Hennen performed general farming services on the farm on a regular and intermittent basis, as we detailed in the findings of fact. Petitioners admitted that Mrs. Hennen purchased cattle, loaded cattle, vaccinated cattle, cleaned shop, picked up parts, and unloaded grain. In addition, they acknowledged that Mrs. Hennen drove a tractor and performed the farm bookkeeping. As noted, Mrs. Hennen worked on the farm approximately 1,000 hours per year. We deem it immaterial that Mrs. Hennen also purportedly was paid a salary for her services with a corresponding deduction taken on their tax returns. In our view, these "regularly performed services are material to the production of an agricultural commodity, and the intermittent services performed are material to the production operations to which they relate." Sec. 1.1402(a)-4(b)(6) Example (1), Income Tax Regs.

The regulations provide in pertinent part, that if the rental income is derived under an arrangement between the owner of land and another person which provides that such other person shall produce agricultural commodities on such land, and that

there shall be material participation by the owner in the production or the management of the production of such agricultural commodities, and there is such material participation by the owner, then the rental income received by the owner pursuant to the arrangement is considered earnings from self-employment.  Sec. 1.1402(a)-4(b), Income Tax Regs. Accordingly, we find that the rental income is includable farm rental income that is part of Mrs. Hennen's net earnings from self-employment under section 1402(a)(1) for each of the taxable years at issue.  This is the same conclusion we reached in a similar case, decided after this case was heard.  Bot v. Commissioner, T.C. Memo. 1999-256.

We have considered all of the arguments presented by the parties, and, to the extent not discussed above, they are without merit or not relevant.

To reflect the foregoing,

Decision will be entered

for respondent.