T.C. Memo. 1999-333

UNITED STATES TAX COURT

MICHAEL & NANCY MCNAMARA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7537-98.                    Filed October 4, 1999.

<u>Garry A. Pearson</u> and <u>Jon J. Jensen</u>, for petitioners.

<u>Blaine C. Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PAJAK, <u>Special Trial Judge</u>:  Respondent determined
deficiencies in petitioners' Federal income taxes in the amounts
of $2,507, $3,191, and $2,963, for the taxable years 1993, 1994,
and 1995, respectively.  All section references are to the
Internal Revenue Code in effect for the years in issue.

## FINDINGS OF FACT

The sole issue for decision is whether rental payments received by petitioners from McNamara Farms, Inc. (McNamara Farms), a corporation solely owned by petitioner Michael McNamara (Mr. McNamara), are includible in petitioners' net earnings from self-employment under section 1402(a)(1) and thus subject to self-employment taxes.

Some of the facts have been stipulated and are so found. Petitioners resided in Bird Island, Minnesota, at the time the petition was filed.

Mr. McNamara began farming in 1977. Mr. McNamara has farmed for approximately 21 years. Mr. McNamara operated the farm as a joint venture with his wife until he incorporated the farm on January 17, 1992. Mr. McNamara is the sole shareholder, officer, and director of McNamara Farms. During the farming seasons, McNamara Farms employed 10 to 20 employees and laid them off during the off-season.

McNamara Farms carries on its business on approximately 1,250 acres of farmland. McNamara Farms rents the farmland from three landlords. Petitioners are one set of landlords, and Mr. McNamara's father is one of the other landlords.

During the taxable years at issue, McNamara Farms rented 460 acres of farmland, including a house, from petitioners under a lease characterized as a Cash Rent Farm Lease. Petitioners owned

the 460 acres of farmland equally as joint tenants.  McNamara Farms paid petitioners rent in the amounts of $45,620, $56,168, and $57,000 in 1993, 1994, and 1995, respectively.

McNamara Farms used the land rented from petitioners in its farming operation to produce agricultural commodities such as corn, soybeans, seed corn, sweet corn, and sugar beets.

On February 1, 1992, Mr. McNamara entered into a purported Employment Agreement with McNamara Farms, signed by Mr. McNamara as President.  The Employment Agreement provided that Mr. McNamara was to be the general manager of the business, that he was to do field work, that he was to do marketing, that he had the responsibility for security of machinery and inventory, that he was to manage other employees, and that he was to do such other usual and customary duties required by the agricultural production operation of McNamara Farms.  In essence, the Agreement memorialized almost the same duties Mr. McNamara had done since he began farming. The Employment Agreement further provided that any portion of compensation not paid in kind (e.g., grain crops) "will be subject to required FICA social security tax and income tax withholding."  The Employment Agreement provided that Mr. McNamara could participate in the McNamara Farms medical reimbursement plan and that he would be provided with medical insurance for himself and his dependents.

Mr. McNamara would have continued to do the same farming jobs even if there had been no lease agreement.

On February 1, 1992, Mrs. McNamara also entered into a purported Employment Agreement with McNamara Farms, signed by Mr. McNamara as President. The Employment Agreement provided that Mrs. McNamara was to perform the following duties for the farming business: Bookkeeping, preparation of meals for employees, field work, assistance in providing security for machinery and inventory, and such other usual and customary duties as may be delegated by the employer from time to time. In essence, the Agreement memorialized almost the same duties that Mrs. McNamara had been performing since Mr. and Mrs. McNamara began farming together. The Employment Agreement further provided that any portion of compensation not paid in kind (e.g., grain crops) "will be subject to required FICA social security tax and income tax withholding." The Agreement also provided that Mrs. McNamara could participate in the McNamara Farms medical reimbursement plans and that she would be provided medical insurance coverage for herself and her dependents.

For all 3 years in issue, petitioners filed their Forms 1040 income tax returns as married individuals filing joint returns. Mr. McNamara stated his occupation was "farmer" and Mrs. McNamara stated her occupation was "bookkeeper". On their Schedules E, Supplemental Income and Loss, petitioners reported that they

received net rental income in the amounts of $19,180, $24,442 and $22,671 in 1993, 1994, and 1995, respectively. On line 7, Wages, salaries, tips, etc., of their Forms 1040, petitioners reported that they received wages in the amounts of $30,603, $30,466, and $31,252 for 1993, 1994, and 1995, respectively. Elsewhere on their 1993, 1994, and 1995 returns, Mr. McNamara and Mrs. McNamara reported earnings from McNamara Farms of $28,019 and $2,584, respectively (total of $30,603), $27,775 and $2,691, respectively, (total of $30,466) and $28,561 and $2,691, respectively (total of $31,252). Contrary to the terms of the Employment Agreements, McNamara Farms failed to withhold Federal income taxes and State income taxes from their earnings. McNamara Farms withheld Federal Insurance Contribution Act taxes and Medicare tax for all 3 years from their earnings.

In the notice of deficiency, respondent determined that the real estate rental payments petitioners received from McNamara Farms during the taxable years at issue are includible in petitioners' net earnings from self-employment under section 1402(a)(1), and thus subject to self-employment tax income. Respondent divided the amounts equally between petitioners with respect to self-employment income and self-employment tax. Respondent also allowed petitioners a deduction for one-half of the self-employment taxes imposed for the taxable years at issue.

OPINION

Section 1401 provides that a tax shall be imposed on the self-employment income of every individual.  Generally, rentals from real estate are excluded from the computation of net earnings from self-employment.  Sec. 1402(a)(1).  However, section 1402(a)(1) also provides that rentals derived by the owner or tenant of land are not excluded from the computation of net earnings from self-employment if:

(A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural * * * commodities * * * on such land, and that there shall be material participation by the owner or tenant * * * in the production or the management of the production of such agricultural * * * commodities, and (B) there is material participation by the owner or tenant * * * with respect to any such agricultural * * * commodity;

In other words, as the regulations under section 1402(a)(1) provide in pertinent part, there is a special rule when:

The income is derived under an arrangement between the owner * * * of land and another person which provides that such other person shall produce agricultural * * * commodities on such land, and that there shall be material participation by the owner * * * in the production or the management of the production of such agricultural * * * commodities; and * * * There is material participation by the owner * * * with respect to any such agricultural * * * commodity.  [Sec. 1.1402(a)-4(b)(1)(i) and (ii), Income Tax Regs.]

Under those circumstances, such income is characterized as "includible farm rental income".  Sec. 1.1402(a)-4(b)(1), Income Tax Regs.  The includible farm rental income received by the

owner pursuant to the arrangement is considered earnings from self-employment.  Id.

In determining whether compensation is includible in self-employment income under sections 1401-1403 such provisions are to be broadly construed so as to favor coverage for Social Security purposes.  Braddock v. Commissioner, 95 T.C. 639, 644 (1990).  The rental exclusion in section 1402(a)(1) is to be strictly construed to prevent this exclusion from interfering with the congressional purpose of effectuating maximum coverage under the Social Security umbrella.  Johnson v. Commissioner, 60 T.C. 829, 832 (1973); Gill v. Commissioner, T.C. Memo. 1995-328.

Petitioners contend that the written lease agreement does not require material participation by petitioners in the farming operations.  Petitioners further contend that the rental income that petitioners received from McNamara Farms was cash rent from real estate, and therefore should be excluded in determining whether petitioners had any net earnings from self-employment as that term is used in section 1402(a)(1).

This Court has held that cash rental payments were includible in self-employment income in Gill v. Commissioner, supra.  This is the same conclusion this Court reached in two similar cases, decided after this case was heard.  Bot v. Commissioner, T.C. Memo. 1999-256, and Hennen v. Commissioner, T.C. Memo. 1999-306.  In Gill, this Court further held that

payments received by husband-wife farmers from a corporation were earnings from self-employment subject to the self-employment tax.

In light of all the facts and circumstances, we must decide whether petitioners received rental income from McNamara Farms pursuant to an "arrangement" between the parties to produce agricultural commodities on the farm within the meaning of section 1402(a)(1)(A).

In Mizell v. Commissioner, T.C. Memo. 1995-571, this Court explained that:

> The word "arrangement" is defined as an agreement.
> Webster's Third New International Dictionary 120 (1993).
> While the concept of an agreement certainly includes a
> contractual agreement, it is a broader concept that would
> also include other forms of agreements not necessarily
> arising from strict contractual relationships.  Consistent
> with its dictionary definition, in most of the instances
> where it is used in the Internal Revenue Code, the word
> "arrangement" refers to some general relationship or overall
> understanding between or among parties in connection with a
> specific activity or situation.  Generally, it is not
> limited only to contractual relationships, or used in a way
> that suggests that its terms and conditions must be included
> in a single agreement, contractual or otherwise.  Congress
> obviously recognized a distinction between a contract and
> the broader concept of an "arrangement", as is evident from
> those sections of the Internal Revenue Code that make
> reference to both.  * * *

McNamara Farms used the farmland to produce agricultural commodities such as corn, soybeans, seed corn, sweet corn, and sugar beets.  With respect to whether under the arrangement petitioners were to materially participate in the farming operations, we look not only to the obligations imposed upon them

by the written lease, "but to those obligations that existed within the <u>overall scheme</u> of the farming operations which were to take place" on their property. <u>Mizell v. Commissioner</u>, T.C. Memo. 1995-571. (Emphasis supplied.) These include petitioners' obligations as longstanding participants in the farming business as well as the "general understanding between * * * [petitioners and McNamara Farms] with respect to the production of agricultural products". <u>Id.</u> Viewed in this light, the arrangement between petitioners and McNamara Farms provided, or contemplated, that petitioners materially participate in the production of agricultural commodities on the farmland.

Mr. McNamara was candid as is evident from the following question during direct examination:

Q. And what do you do for McNamara Farms?

A. I operate the farm. I run the farm from planting to harvest.

Mr. McNamara claimed he made all the management decisions. Mr. McNamara asserted that his wife "was a homemaker and ran when she was needed for, you know, meals or parts." Before incorporation, Mrs. McNamara did not do the bookkeeping, but otherwise performed the duties outlined above. Mr. McNamara tried to downplay his wife's participation. Mrs. McNamara did not appear in Court, even though petitioners' trial memorandum stated that both parties would testify. Under these circumstances, we are not

required to accept the self-serving testimony of Mr. McNamara as gospel. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Although petitioners contend that the written lease agreement did not require them to materially participate in the farming operations, the record supports a finding that petitioners played a material role in the production of agricultural commodities under an arrangement with McNamara Farms.

For about 21 years through the taxable years at issue, Mr. McNamara performed general farming services on the farm on a regular and intermittent basis, as we detailed in the findings of fact. Mrs. McNamara failed to testify, but it is clear that for a good number of years she did the same. In our view, these "regularly performed services are material to the production of an agricultural commodity, and the intermittent services performed are material to the production operations to which they relate." Sec. 1.1402(a)-4(b)(6), Example (1), Income Tax Regs.

The regulations provide in pertinent part, that if the rental income is derived under an arrangement between the owner of land and another person which provides that such other person shall produce agricultural commodities on such land, and that there shall be material participation by the owner in the production or the management of the production of such agricultural commodities, and there is such material participation by the owner, then the rental income received by

the owner pursuant to the arrangement is considered earnings from self-employment.  Sec. 1.1402(a)-4(b), Income Tax Regs. Accordingly, we find that the rental income is includible farm rental income that is part of petitioners' net earnings from self-employment under section 1402(a)(1) for each of the taxable years at issue.

We have considered all of the arguments presented by the parties, and, to the extent not discussed above, they are without merit or not relevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.