**Lucille TISDALL, Plaintiff,**

v.

**John TISDALL, Jr., Fred Haux and Sidney Haux, Defendants.**

**Fred HAUX and Sidney Haux, Defendants, Third Party Plaintiffs, and Appellees,**

v.

**Dennis LAIB and Laib, Inc., a South Dakota Corporation, Third Party Defendants and Appellants.**

**No. 15806.**

Supreme Court of South Dakota.

Argued Feb. 17, 1988.

Decided April 13, 1988.

William A. Wyman, Rapid City, for defendants, third party plaintiffs and appellees.

Chester A. Groseclose, Jr. of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for third party defendants and appellants.

SABERS, Justice.

Real estate agency appeals from a judgment for bulk sale purchasers for indemnification of a creditor's unpaid claim. We affirm.

## FACTS

In September 1983, Lucille Tisdall (Lucille) lent $6,000 to her step-son, John Tisdall, Jr. (Tisdall), to enable him to purchase the license and inventory of a liquor business owned by Gwendolynn Grad. In March 1984, Tisdall was seeking a new building to house his liquor business. He approached Fred and Sidney Haux (Hauxes) about renting a building they owned, which led to discussions of Hauxes' purchase of the business.

Dennis Laib and Laib Realty (Laib) were involved in the prior transaction between Tisdall and Grad. Laib testified that Tisdall requested that Laib act as Tisdall's agent in the transaction between Tisdall and Hauxes. Tisdall owed money to Laib from prior transactions. Laib agreed to handle the current transaction to recoup the money owed and to receive $1,000 promised by Tisdall. Hauxes testified that Laib approached them and asked if he could handle the transaction. They agreed to this arrangement on the condition that they were not responsible for his fees. Hauxes testified that Laib told them that they would not have to pay him any money; he only wished to recover money owed to him by Tisdall.

Hauxes signed an offer and agreement to purchase with Laib Realty on May 18th, 1984. At some point during this period Hauxes gave Laib a check for $100 in earnest money. This check was returned to Hauxes when negotiations reached an impasse in May 1984.

Hauxes signed a document[1] which purports to direct Laib to pay the proceeds of the transaction to Tisdall. They claim this

---

1. Laib's document (Exhibit 15) provided:
   As purchasers/buyers of a liquor "off-sale" license (Cork N' Bottle) from John Tisdall: We direct Laib Realty as realtor involved in

   the sale & purchase of this liquor license to make full distribution of all proceeds paid by us to John Tisdall as part of the purchase price.

document was signed on June 18th, 1984 in an attempt to induce Tisdall to consummate the transaction. They claimed this was necessary because after the notice to creditors had been mailed, Tisdall made it clear that he did not want the claim made by Lucille to be paid from the purchase money. Laib claims the document was signed by Hauxes on June 28th, 1984, when Tisdall and Hauxes signed a bill of sale agreement for the purchase of Tisdall's equipment, inventory, and liquor license. Laib and his attorney, Randy Seiler, testified that the text of the document was dictated by Seiler over the phone to Laib. Laib claims he called Seiler when alerted that Hauxes intended to go through with the sale, but not pay Lucille. Hauxes believed they were protected from liability because the bill of sale included an indemnity provision which purported to require that Tisdall indemnify Hauxes in the event that they were forced to pay any of his unpaid creditors' claims. After Hauxes tendered the purchase money to Laib on June 28th, Laib paid himself and creditors other than Lucille and then remitted the remainder of the funds to Tisdall. He made no accounting to Hauxes. Lucille sued Hauxes on the claim for $6,000. She contended that Hauxes violated provisions of the bulk sales laws in refusing to pay her submitted creditor's claim. The trial court found for Lucille against Hauxes and for Hauxes against Laib.

1. LAIB IS LIABLE TO HAUXES FOR FAILURE TO ESCROW FUNDS TO COVER A CREDITOR'S DISPUTED CLAIM

■ The trial court held that Hauxes' deposit of the purchase money with Laib created a fiduciary relationship and Laib's failure to escrow part of the purchase money to cover creditors' disputed claims breached that fiduciary duty.

Under SDCL 57A–6–106 it is the duty of the transferee to apply the money paid in consideration of the transfer to the debts of the transferor which are shown on the list furnished by the transferor or are filed in response to the creditor's notice. SDCL 57A–6–106(1). The trial court found that Hauxes failed to comply with the statutory requirements of the bulk sales laws and therefore were liable to Lucille. The trial court found and the record substantiates that there was no express or written agreement whereby Laib was to comply with SDCL 57A–6–106. However, the trial court concluded that the deposit of the purchase money with Laib created a fiduciary relationship whereby the proceeds were to be applied pursuant to law. Laib argues that there is no statute which imposes on the transferor's agent (or anyone other than the transferee) the duty imposed upon the transferee. Laib further argues that there is no evidence to support a relationship between Laib and Hauxes which would impose upon Laib the duty to comply with SDCL 57A–6–106.

■ The trial court imposed liability on Laib on the basis of a fiduciary relationship between Laib and Hauxes.[2] Laib is liable to Hauxes as their agent. The bulk sales statutes set the standard for the performance of the duties of the transferee in a bulk sale. These statutes prescribe the duties of the principal, Hauxes. Although Laib was the agent of Tisdall, the transferor, for the purposes of arranging an agreement on the terms of the transaction, he became an agent of the transferees when he requested and was given the authority to handle the bulk sale transaction. "Agency is the representation of one called the principal by another called the agent in dealing with third persons." *Southard v. Hansen*, 376 N.W.2d 56, 58 (S.D.1985). SDCL 59–1–1. The notice to creditors instructed creditors to submit their claims to Laib. Hauxes testified that even though they knew notices were to be sent to Tisdall's creditors, they never received or were aware of any specific claims filed. The factual elements required to create an agency relationship are "[t]he manifesta-

2. We note that ch. 55–7, which deals with third-party responsibility for fiduciary acts defines "fiduciary" to include an "agent" or "other person acting in a fiduciary capacity for any per-

son, trust or estate." SDCL 55–7–2(2). SDCL 55–7–2(4) defines "principal" to include "any person to whom a fiduciary as such owes an obligation."

tion by the principal that the agent shall act for him, the agent's acceptance of the undertaking, and the understanding of the parties that the principal is to be in control of the undertaking." *Southard, supra,* citing *Kasselder v. Kapperman,* 316 N.W. 2d 628, 630 (S.D.1982).

The facts in this case substantiate agency. Hauxes accepted Laib's offer to handle the bulk sale. Laib's actions in sending out notices to creditors, receiving the claims, and taking charge of the purchase money demonstrate his agent status. The parties understood that the principal (Hauxes) was to control the undertaking. Laib testified that he was directed, on advice of counsel, to distribute the money according to the instructions of Hauxes. Hauxes understood that Laib would distribute the money according to the applicable statutory requirements. Laib believed Hauxes wanted him to transfer all proceeds to Tisdall other than amounts for undisputed claims. He attempted to relieve himself from his obligations to his principal by the document which he says was drafted and signed on June 28th. Laib and Seiler testified that this document was drafted with the intent of relieving Laib of liability for the nonpayment of Lucille's claim. Hauxes claimed it meant Laib was to pay Tisdall only the "net" proceeds. The trial court found that this document was ambiguous. It was ambiguous under these circumstances, in light of the testimony of the parties and the fact that the two parties to the document viewed its effect differently. The trial court further found that because of this ambiguity the document should be construed against the preparer, Laib. Therefore, it was ineffective in its attempt to relieve Laib from his obligations to his principal.

2. THE SIX MONTH STATUTE OF LIMITATIONS PROVISION IN THE BULK SALES LAW DID NOT BAR HAUXES' CLAIM AGAINST LAIB

Laib contends that Hauxes' claim depends upon the bulk sales law and must therefore be subject to the statute of limitations for those provisions.[3] However, the bulk sales statute of limitations provision does not apply because the basis of Hauxes' claim is a breach of the agency relationship created between Laib and Hauxes. The six-month statute of limitations in SDCL 57A-6-111 controls the period in which unpaid creditors can sue the transferee. This statute of limitations does not bar an action based on a breach of Laib's duties as an agent to Hauxes.[4]

We cannot say that the trial court's findings were clearly erroneous or that its conclusions were in error. Therefore, we affirm.

All the Justices concur.

---

3. SDCL 57A-6-111 provides:
   No action under this chapter shall be brought nor levy made more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed. If the transfer has been concealed, actions may be brought or levies made within six months after its discovery.

4. This action is controlled by SDCL 15-2-13 which provides in part:
   ... the following civil actions ... can be commenced only within six years after the cause of action shall have accrued:
   (1) An action upon a contract, obligation, or liability, express or implied, ...