## Rollin J. Morehouse and Maureen B. Morehouse, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 823–11.  Filed June 18, 2013.

During 2006 and 2007 P–H received payments under the U.S. Department of Agriculture Conservation Reserve Program (CRP). Respondent determined that P–H was liable for self-employment tax under I.R.C. sec. 1401 on the CRP payments. P–H claims that the CRP payments are not includible in his self-employment income because he was neither engaged in nor derived the CRP payments from operation of a trade or business. Alternatively, P–H claims that the CRP payments are excluded from the calculation of his net earnings from self-employment under I.R.C. sec. 1402(a)(1) because the CRP payments constituted "rentals from real estate". *Held*: P–H's CRP payments are includible in his self-employment income under I.R.C. sec. 1401 because he was engaged in a trade or business during the years in issue and there was a nexus between his trade or business and the CRP payments he received. *Held*, *further*, P–H's CRP payments are not "rentals from real estate" within the meaning of I.R.C.

sec. 1402(a)(1). *Wuebker v. Commissioner*, 110 T.C. 431 (1998), *rev'd*, 205 F.3d 897 (6th Cir. 2000), is overruled.

*Paul J. Quast* and *Neal J. Shapiro*, for petitioners.
*Blaine C. Holiday*, for respondent.

MARVEL, *Judge*: In a notice of deficiency dated October 14, 2010, respondent determined deficiencies with respect to petitioners' Federal income tax of $3,341 and $3,664 for 2006 and 2007, respectively. After concessions,[1] the sole issue for decision is whether petitioners are liable for self-employment tax under section 1401[2] on payments they received under the U.S. Department of Agriculture (USDA) Conservation Reserve Program (CRP).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioners resided in Minnesota when they filed their petition.

### I. *Background*

Mr. Morehouse (hereinafter, petitioner) holds a bachelor's degree in business from the University of Minnesota. Following graduation he worked as a regional sales manager and as an associate publisher. In 1987 petitioner began providing marketing and fundraising services for the University of Texas at Austin.

In 1994 petitioner acquired 503 acres of land in Grant County, South Dakota (Grant County property), 320 acres of land in Roberts County, South Dakota (Roberts County property), and 400 acres of land in Day County, South Dakota (Day County property) (collectively, South Dakota prop-

---

[1] On their 2006 Schedule E, Supplemental Income and Loss, petitioners reported that they paid management fees of $2,001 with respect to property in Grant County, South Dakota, that Rollin J. Morehouse owned. *See infra* pp. 351–352. Petitioners concede that their tax return preparer erroneously entered $2,001 and that they actually paid management fees of $201 with respect to the property.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some amounts have been rounded to the nearest whole number.

erties). He acquired the South Dakota properties through inheritance and by purchasing various undivided interests in the properties from his relatives. All of the land was tillable cropland, with the exception of: (1) a gravel pit on the Grant County property; and (2) 129 acres of the Roberts County property, which petitioner's father had placed in the CRP program. [3]

Petitioner, who lived in Texas at the time he acquired the South Dakota properties, did not personally farm any of the land. Instead, he rented the tillable portions of the South Dakota properties to various individuals who farmed their rented portions. [4]

In 2003 petitioner left his position at the University of Texas and moved with his family to Minnesota. Upon moving to Minnesota petitioner became the primary caregiver for his four sons. Although petitioner retired from the corporate sphere, he continued to manage his various investments and property interests, including his interests in the South Dakota properties.

## II. *Petitioner's Participation in the CRP*

### A. *The CRP in General*

The CRP was established pursuant to the Food Security Act of 1985. *See* Food Security Act of 1985, Pub. L. No. 99–198, secs. 1231–1236, 99 Stat. at 1509–1514 (codified as amended at 16 U.S.C. secs. 3831–3835 (2012)); *see also* 7 C.F.R. pt. 1410 (2011). Under the CRP, the USDA may enter into contracts with owners and operators of land "to conserve and improve the soil, water, and wildlife resources of such land and to address issues raised by State, regional, and national conservation initiatives." 16 U.S.C. sec. 3831(a). Owners and operators of land agree to implement a conservation plan and refrain from using the land for agricultural

_____

[3] The CRP contract with respect to the 129-acre parcel in Roberts County was conveyed with the land to petitioner in 1994. In 1999 petitioner in his capacity as owner of the Roberts County property entered into a new CRP contract with respect to the 129-acre parcel. *See infra* pp. 354–355.

[4] Petitioner rented the Grant County property and the remaining 191 acres of the Roberts County property until 1997, when he placed that land in the CRP. *See infra* pp. 353–354. He rented the Day County property from the time of his acquisition through the years in issue.

purposes. *Id.* sec. 3832(a). In return, the USDA shares the cost of carrying out the conservation plan and pays to the owner or operator an "annual rental payment".[5] *Id.* sec. 3833.

### B. *Petitioner's Enrollment in the CRP and the CRP Contracts*

In 1997 petitioner submitted applications to the USDA, offering for enrollment in the CRP the tillable land on the Grant County property as well as the remaining 191 acres of the Roberts County property.

In 1997 the Grant County and Roberts County Farm Service Agency (FSA) offices approved petitioner's applications and accepted his land into the CRP. Subsequently, the Commodity Credit Corporation (CCC) executed the resulting CRP contracts with respect to the Grant County and Roberts County properties. Petitioner personally assumed all obligations and responsibilities of compliance under the CRP contracts.

With respect to the Grant County property, petitioner and the CCC executed two contracts: (1) contract No. 262, covering 180 acres of land (contract 262); and (2) contract No. 263, covering 251 acres of land (contract 263). Both Grant County CRP contracts listed petitioner as the owner of the land and did not identify anyone as the operator of the land. Contract 262 provided that the CCC would pay to petitioner a first-year payment of $8,609 and an annual contract payment of $9,391.[6] Contract 263 provided that the CCC would pay to petitioner a first-year payment of $12,405 and an annual contract payment of $13,533.[7]

Pursuant to a conservation plan attached to the Grant County CRP contracts, petitioner agreed to: (1) maintain already established grass and legume cover for the life of the contract; (2) "[e]stablish perennial vegetative cover on land

---

[5] Tit. 16 U.S.C. sec. 3833(2) (2012) provides that the annual "rental" payment is intended to compensate owners and operators for "(A) the conversion of highly erodible cropland normally devoted to the production of an agricultural commodity on a farm or ranch to a less intensive use; and (B) the retirement of any cropland base and allotment history that the owner or operator agrees to retire permanently."

[6] The "rental rate" under contract 262 was set at $52.26 per acre.

[7] The "rental rate" under contract 263 was set at $53.83 per acre.

temporarily removed from agricultural production", including pubescent or intermediate wheatgrass, alfalfa, and sweet clover; and (3) engage in "pest control and pesticide management" for the life of the contract. The CCC agreed to share with petitioner the cost of establishing these conservation plans.

The Roberts County CRP contract covered 191 acres of petitioner's land. The Roberts County CRP contract listed petitioner as the owner of the land and did not identify anyone as the operator of the land. The Roberts County CRP contract provided that the CCC would make an annual contract payment of $9,666.[8]

Pursuant to a conservation plan attached to the Roberts County CRP contract, petitioner agreed to: (1) "[c]ontrol pests such as weeds, livestock, insects and disease" and (2) "[e]stablish adapted native perenial [sic] vegetative cover" including Western wheatgrass, green needlegrass, and alfalfa. The conservation plan also provided an estimated cost share for the plan. Once the work was completed, petitioner was required to provide to the CCC "a report of performance" and "submit receipts and seed tags affiliated with practice establishment". The CCC agreed to share with petitioner the costs of establishing the conservation plan.[9]

In June 1999 petitioner and the CCC executed a new CRP contract (1999 Roberts County CRP contract) with respect to the 129-acre parcel in Roberts County that petitioner had acquired in 1994 already subject to a CRP contract. The 1999 Roberts County CRP contract listed petitioner as the owner of the land and did not identify any operator of the land. The 1999 Roberts County CRP contract provided that the CCC would make an annual contract payment of $5,757.[10] Under the 1999 Roberts County CRP contract, petitioner agreed to: (1) maintain already established grass and legume cover for the life of the contract; (2) "establish native perennial vegetative cover on land temporarily removed from agricultural

[8] The "rental rate" under the Roberts County CRP contract was set at $50.50 per acre.

[9] In September 2006 the CCC agreed to modify the Roberts County CRP contract and extend the expiration date of that contract to September 30, 2012.

[10] The "rental rate" under the 1999 Roberts County CRP contract was set at $44.63 per acre.

production"; (3) engage in "pest control and pesticide management" for the life of the contract; and (4) control weeds by either mowing or chemical means. The 1999 Roberts County CRP contract prohibited petitioner from haying or grazing the enrolled land.

## C. *Implementation of the Conservation Plans*

Petitioner hired Wallace Redlin to carry out some of petitioner's obligations under the CRP contracts. [11] Mr. Redlin was a retired farmer who had placed all of his land in the CRP. Mr. Redlin previously had rented the Grant County and Roberts County properties from petitioner for use in Mr. Redlin's farming operations.

In 1998 petitioner purchased the required seeding materials and shipped the materials to Mr. Redlin. Mr. Redlin then performed the initial seedbed preparation and seeding. In 2000, pursuant to the 1999 Roberts County CRP contract, Mr. Redlin plowed a portion of the land and reseeded it with various grasses.

## D. *Termination of CRP Contract 262*

In 2001 Grant County FSA employees discovered that petitioner was engaging in gravel quarry activity on the Grant County property and had been using part of the property for a road. The Grant County FSA, acting on behalf of the USDA, terminated petitioner's participation in the CRP with respect to nine acres of the Grant County property and required him to refund $2,540, an amount equal to all prior payments with respect to that portion of the property, plus interest and liquidated damages. The Grant County FSA also provided for the implementation of CRP contract No. 262–A,

---

[11] On July 30, 1997, petitioner mailed to the Grant County FSA a letter, titled as an addendum. In the letter petitioner indicated that he will "assume all obligations and responsibilities of contractual compliance as may be administered by and through FSA or otherwise pertaining to subject lands by independent contract with WALLACE L. REDLIN, Jr. for machine hire, monitoring and supervision as essential and necessary on all land identified in the CRP contract". Petitioner testified that he sent the addendum to the Grant County FSA to clarify how he planned to comply with the CRP contract considering the fact that he resided in Texas at the time.

covering the remaining 171 acres of the Grant County property, which continued to be enrolled in the CRP program.

### III. *Petitioner's Activities With Respect to the South Dakota Properties*

Although Mr. Redlin performed some of petitioner's obligations under the CRP contracts at petitioner's request and direction, petitioner fulfilled other obligations, including the making of annual certifications that he was implementing the conservation plans in accordance with the CRP contracts. Between 1997 and 2007 petitioner participated in three CRP haying programs with respect to the South Dakota properties. In July 2002 petitioner requested authority for emergency haying or grazing.[12] Petitioner signed the necessary forms and made donations to ranchers and farmers as provided for by the CRP.

Petitioner also personally purchased materials needed to implement the conservation plans, which he then shipped to Mr. Redlin. Petitioner paid Mr. Redlin for the work he performed to satisfy some of petitioner's obligations under the CRP contracts. Petitioner also sought and received from the USDA cost-sharing payments for the seeding and weeding activities on the Grant County and Roberts County properties. Petitioner gathered various documents, including receipts and invoices, and submitted these documents along with official applications in order to receive the cost-sharing payments.

In addition to his activities with respect the CRP contracts, petitioner engaged in various other activities with respect to the South Dakota properties. Petitioner allowed individuals to hunt on portions of the South Dakota properties. He traveled to meetings with various parties with the express purpose of negotiating agreements with people interested in hunting on the South Dakota properties. Petitioner also operated a gravel pit on the Grant County property. During the years at issue petitioner sold gravel to the Grant County Highway Department and Lura Township, the local township. Petitioner also rented the Day County property.

---

[12] Petitioner donated the hay and/or the haying or grazing privileges to a livestock producer and accordingly was not required to reduce the amount of his CRP payment with respect to that land.

Between 1994 and 2007 petitioner visited the South Dakota properties several times each year. In 2006 petitioner visited the South Dakota properties four times. In 2007 petitioner visited the South Dakota properties two times. He typically visited the South Dakota properties for two to three days at a time. On such trips petitioner would visit the gravel pit to ensure that there had been no unauthorized excavation or removal of gravel, drive to each of the South Dakota properties, and meet with officials at the FSA and the Grant County Highway Department. He also would meet with individuals who had an interest in renting one of his properties or in hunting on the properties.

IV. *Petitioner's Income With Respect to the South Dakota Properties*

In 2006 petitioner received CRP payments of $22,449 and $15,423 with respect to the Grant County and Roberts County properties, respectively.

In 2007 petitioner received income of $25,869 with respect to the Grant County property as follows: (1) CRP payments of $22,449; (2) a payment of $2,515 from Mr. Redlin for hunting privileges; and (3) a payment of $905 from Mike Krakow for the right to cut hay on the land. He received income of $17,281 with respect to the Roberts County property as follows: (1) CRP payments of $15,423; and (2) a payment of $1,858 from the South Dakota Game and Fish Department for participation in a walk-in hunting program.

V. *Petitioners' Tax Reporting and the Notice of Deficiency*

Petitioners timely filed Forms 1040, U.S. Individual Income Tax Return, for 2006 and 2007. On their returns petitioners identified their occupations as "self-employed". On attached Schedules E petitioners reported income and expenses with respect to their three properties as follows:

*2006 Schedule E*

|  | Day County property | Grant County property | Roberts County property |
|---|---|---|---|
| Rents received | $22,478 | $22,449 | $15,423 |
| Total expenses | 3,287 | 7,606 | 4,662 |
| Net income | 19,191 | 14,843 | 10,761 |

*2007 Schedule E*

|  | Day County property | Grant County property | Roberts County property |
|---|---|---|---|
| Rents received | $37,962 | $25,869 | $17,281 |
| Total expenses | 3,017 | 5,194 | 4,287 |
| Net income | 34,945 | 20,675 | 12,994 |

On October 14, 2010, respondent mailed to petitioners the notice of deficiency for 2006 and 2007 determining that: (1) petitioners erroneously reported their CRP payments as farm rental income on their returns; (2) petitioners should have reported the CRP payments as income on a Schedule F, Profit or Loss From Farming, for each year. Respondent also determined that the CRP payments constituted self-employment income and therefore determined that petitioners had unreported self-employment income of $25,604 [13] and $28,391 [14] for 2006 and 2007, respectively. [15] Respondent allowed petitioners additional deductions with respect to the self-employment tax liabilities.

## OPINION

A taxpayer's self-employment income is subject to self-employment tax. Sec. 1401(a) and (b). Self-employment tax is assessed and collected as part of the income tax, must be included in computing any income tax deficiency or overpayment for the applicable tax period, and must be taken into account for estimated tax purposes. Sec. 1401; *see also* sec. 1.1401–1(a), Income Tax Regs. Self-employment income generally is defined as "the net earnings from self-employment

---

[13] This figure represents the net income petitioner received in 2006 with respect to the Grant County and Roberts County properties. As stated *supra* p. 357, in 2006 petitioner's only income with respect to the Grant County and Roberts County properties consisted of CRP payments.

[14] This figure represents the net CRP payments petitioner received in 2007 with respect to the Grant County and Roberts County properties. As discussed *supra* p. 357, in 2007 petitioner received additional income of $5,278 with respect to these properties. Respondent did not include this additional income in calculating petitioners' unreported self-employment income.

[15] Respondent appears to have accepted that the income generated by petitioner's rental activity with respect to the Day County property is not subject to self-employment tax, presumably because of the provisions of sec. 1402(a)(1). *See also Henderson v. Flemming*, 283 F.2d 882, 888 (5th Cir. 1960).

derived by an individual". Sec. 1402(b). Section 1402(a) defines "[n]et earnings from self-employment" as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business". *See also* sec. 1.1402(a)–1, Income Tax Regs. In computing a taxpayer's net earnings from self-employment, section 1402(a)(1) provides:

> [T]here shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares)[16] together with the deductions attributable thereto, unless such rentals are received in the course of a trade or business as a real estate dealer; except that the preceding provisions of this paragraph shall not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land, and that there shall be material participation by the owner or tenant (as determined without regard to any activities of an agent of such owner or tenant) in the production or the management of the production of such agricultural or horticultural commodities, and (B) there is material participation by the owner or tenant (as determined without regard to

---

[16] In 2008 Congress amended sec. 1402(a) to read: "[T]here shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares, and including payments under section 1233(2) of the Food Security Act of 1985 (16 U.S.C. 3833(2)) to individuals receiving benefits under section 202 or 223 of the Social Security Act)". Under sec. 1402(a) as amended, payments made under 16 U.S.C. sec. 3833(2) to individuals who were receiving benefits under sec. 202 or sec. 223 of the Social Security Act (SSA) are excluded from the calculation of net earnings from self-employment. Tit. 16 U.S.C. sec. 3833(2) (2012) refers to payments received from the USDA under the CRP. *See supra* p. 352. The amendment applies to CRP payments made after December 31, 2007. Food, Conservation, and Energy Act of 2008, Pub. L. No. 110–246, sec. 15301(c), 122 Stat. at 2263. SSA sec. 202 provides for the payment of old-age and survivors insurance benefits. 42 U.S.C. sec. 402 (2012). SSA sec. 223 provides for the payment of disability insurance benefits. 42 U.S.C. sec. 423 (2012).

Petitioner received the payments at issue before December 31, 2007. Furthermore, petitioner does not contend, and he has not introduced any evidence to show, that he was receiving benefits under the SSA. Accordingly, the 2008 amendment to sec. 1402(a) is inapplicable to our analysis herein.

any activities of an agent of such owner or tenant) with respect to any such agricultural or horticultural commodity.[17] * * *

The self-employment tax provisions are construed broadly in favor of treating income as earnings from self-employment. *Braddock v. Commissioner*, 95 T.C. 639, 644 (1990); *Hornaday v. Commissioner*, 81 T.C. 830, 834 (1983); *Hennen v. Commissioner*, T.C. Memo. 1999–306; S. Rept. No. 81–1669 (1950), 1950–2 C.B. 302, 354.

Respondent contends that the CRP payments are taxable as self-employment income because petitioner derived the CRP payments from his trade or business of conducting an environmentally friendly farming operation. [18]

Petitioner contends that the CRP payments are not income from a trade or business and therefore are not includible in his self-employment income. Petitioner contends that he was not involved in the trade or business of farming, that his minimal activities with respect to the CRP land did not cause him to become active in the trade or business of farming, and that there was no nexus between the CRP payments received and his business activities. In the alternative, petitioner contends that the CRP payments are excluded from the calculation of net earnings from self-employment under the "rentals from real estate" exclusion in section 1402(a)(1).

We examine the parties' contentions below, taking into account the burden of proof, which rests upon petitioners. *See* Rule 142(a)(1). Respondent's determinations are presumed to be correct; petitioners must prove that respondent's

_____

[17] The regulations under sec. 1402(a)(1) refer to the farm rental income that is included in a taxpayer's net earnings from self-employment as includible farm rental income. *See, e.g.*, sec. 1.1402(a)–4(b), Income Tax Regs. In this Opinion we will refer to such income as includible farm rental income.

[18] In arguing that petitioner was engaged in an active trade or business, respondent relies on determinations made by the Grant County FSA that petitioner was "actively engaged in a farming operation". This Court previously has held that a determination by the USDA that an individual was actively engaged in farming "is not a determination for Federal income tax purposes that * * * [the individual was] actively engaged in a trade or business for purposes of section 162(a)." *Hasbrouck v. Commissioner*, T.C. Memo. 1998–249, 1998 WL 373337, at *12, *aff'd without published opinion*, 189 F.3d 473 (9th Cir. 1999). Accordingly, the Grant County FSA determination does not control our decision as to whether petitioner was actively engaged in a trade or business for purposes of sec. 162(a).

determinations are erroneous in order to rebut the presumption and satisfy their burden of proof. *See id.*; *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

I. *Self-Employment Income*

A taxpayer's net earnings from self-employment include the gross income derived from any trade or business carried on by the taxpayer. Sec. 1402(a)(1). The term "derived from" "necessitates a nexus between the income and the trade or business actually carried on by the taxpayer." *Bot v. Commissioner*, 353 F.3d 595, 599 (8th Cir. 2003), *aff'g* 118 T.C. 138 (2002); *see also McNamara v. Commissioner*, 236 F.3d 410, 413 (8th Cir. 2000), *rev'g* T.C. Memo. 1999–333. The term "trade or business" "shall have the same meaning as when used in section 162 (relating to trade or business expenses)". Sec. 1402(c). The applicable regulations provide that "[t]he trade or business must be carried on by the individual, either personally or through agents or employees." Sec. 1.1402(a)–2(b), Income Tax Regs. Under these principles, payments constitute self-employment income if they: "(1) are derived (2) from a trade or business (3) carried on by * * * [the taxpayer or his] agents." *Bot v. Commissioner*, 353 F.3d at 599; *see also Wuebker v. Commissioner*, 205 F.3d 897, 901 (6th Cir. 2000), *rev'g* 110 T.C. 431 (1998). Accordingly, we must decide: (1) whether petitioner carried on a trade or business during the years in issue, whether personally or through an agent; and (2) if so, whether there was a nexus between the trade or business conducted and the income petitioner received.

A. *Existence of a Trade or Business*

1. *Analysis*

To be engaged in a trade or business with respect to which deductions are allowable under section 162, the taxpayer must be involved in the activity with continuity and regularity, and the taxpayer's primary purpose for engaging in the activity must be for income or profit. *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987). Additionally, the taxpayer's business operations must have commenced. *Goodwin v. Commissioner*, 75 T.C. 424, 433 (1980), *aff'd without published opinion*, 691 F.2d 490 (3d Cir. 1982). Whether a tax-

payer is engaged in a trade or business must be ascertained from a review of all relevant facts and circumstances. *Commissioner v. Groetzinger*, 480 U.S. at 35.

The record establishes that petitioner expanded his participation in the CRP over the years and that he participated in the CRP with continuity and regularity during 2006 and 2007. The record further establishes that petitioner did so with the primary purpose of making a profit. After his initial experience with the CRP petitioner decided to enroll the Grant County and Roberts County properties in the CRP because he could get a higher rate of return from participating in the CRP than from leasing the properties for farming. He negotiated and executed the CRP contracts and, by doing so, obligated himself as the owner of the properties to satisfy significant contractual obligations regarding planting, maintenance, and use of the properties enrolled in the CRP and compliance with CRP requirements. Although petitioner did not actually perform the planting and maintenance work required by the CRP, he hired an individual, Mr. Redlin, to perform the work according to CRP specifications, purchased necessary materials, such as seed, and provided them to Mr. Redlin, and regularly inspected the properties to ensure that they were being maintained and used in accordance with the CRP contractual obligations. On these facts we find that petitioner engaged in the business of participating in the CRP and managing his CRP properties with the primary intent of making a profit.

Petitioner contends that his actual participation in the CRP and his work complying with the CRP contract requirements were de minimis and did not constitute farming. He maintains that all physical labor necessary to plant, seed, weed, mow, and maintain the properties (property maintenance activities) in accordance with the CRP contracts was performed by his contractor and should not be attributed to him. It is immaterial, however, that the property maintenance activities were carried out by someone other than petitioner. As noted *supra*, for purposes of section 1402 a taxpayer may conduct his trade or business personally or through an agent. Sec. 1.1402(a)–2(b), Income Tax Regs.; Rev. Rul. 60–32, 1960–1 C.B. 23 (stating that similar payments made to individuals under the Soil Bank Act were includible in the individual's net earnings from self-employ-

ment if the individual operated his farm either personally or through agents or employees).[19] A taxpayer who hires another "to render the services necessary to fulfill" the taxpayer's obligations under a contract is nonetheless liable for self-employment tax with respect to the income the taxpayer receives pursuant to that contract. *Moorhead v. Commissioner*, T.C. Memo. 1993–314, 1993 WL 267200, at *6.

As a participant in the CRP, petitioner, either directly or through Mr. Redlin as his agent,[20] regularly and continu-

---

[19] Rev. Rul. 60–32, 1960–1 C.B. 23, 26, states in pertinent part:

Payments and benefits attributable to the acreage reserve program are includible in determining the recipient's net earnings from self-employment if he operates his farm personally or through agents or employees. This is also true if his farm is operated by others and he participates materially in the production of commodities, or management of such production, within the meaning of section 1402(a)(1) * * *. * * * If he does not so operate or materially participate, payments received are not to be included in determining net earnings from self-employment.

The Internal Revenue Service (IRS) has stated that Notice 2006–108, 2006–2 C.B. 1118, discussed *infra* pp. 368–370, would render Rev. Rul. 60–32, *supra*, obsolete.

[20] Neither party addresses whether, under applicable State law, Mr. Redlin was petitioner's agent. Because South Dakota has the most significant relationship to petitioner and Mr. Redlin and the transaction at issue, whether Mr. Redlin was petitioner's agent is governed by South Dakota law. *See Stockmen's Livestock Exch. v. Thompson*, 520 N.W.2d 255, 257–258, 258 n.1 (S.D. 1994). Under South Dakota law, the elements required to create an agency relationship are "'manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking, and the understanding of the parties that the principal is to be in control of the undertaking.'" *Tisdall v. Tisdall*, 422 N.W.2d 105, 107–108 (S.D. 1988) (quoting *Southard v. Hansen*, 376 N.W.2d 56, 58 (S.D. 1985)). In *Tisdall*, the Supreme Court of South Dakota found that a principal-agent relationship existed when the principal directed the agent to distribute revenue according to applicable statutory guidelines.

Petitioner hired Mr. Redlin to perform all of the physical farming duties required under the CRP contracts. Mr. Redlin apparently accepted petitioner's offer, as indicated by Mr. Redlin's completion of the seeding, weeding, mowing, and maintenance activities required under the CRP contracts. Although petitioner testified that he never directed Mr. Redlin's activities, we reject the testimony as it is apparent from the record that petitioner initially directed Mr. Redlin to perform the property maintenance activities required by the CRP contracts and retained the ability to direct

Continued

ously: (1) satisfied seeding and weed control obligations with respect to the Grant County and Roberts County properties as required under the CRP contracts; (2) visited the Grant County and Roberts County properties to ensure that the properties maintained their status as CRP properties; (3) filed annual certifications; (4) participated in emergency haying programs; (5) requested cost-sharing payments; and (6) made decisions regarding the profitability of keeping the Grant County and Roberts County properties enrolled in the CRP. Regardless of whether some or all of these activities qualify as farming, we find that petitioner was engaged in the business of participating in the CRP and that he enrolled, maintained, and managed multiple properties subject to CRP contracts with the primary intent of making a profit.

2. *Additional Support*

Our conclusion is supported by and is consistent with existing caselaw and the administrative position of the IRS set forth in Notice 2006–108, 2006–2 C.B. 1118, which was released on December 5, 2006. It is also consistent with Congress' enactment in 2008 of a limited exclusion for CRP payments made to taxpayers receiving Social Security retirement or disability benefits. We explain below.

---

and control the work that Mr. Redlin was to perform to comply with the CRP contracts. *See id.* Accordingly, we find that Mr. Redlin was petitioner's agent.

We note that Notice 2006–108, *supra*, states that "[p]articipation in a CRP contract meets the criteria to be a trade or business irrespective of whether the participant performs the required activities personally or arranges for his obligations to be satisfied by a third party." Notice 2006–108, *supra*, does not discuss the apparent requirement under sec. 1.1402(a)–2(b), Income Tax Regs., that the trade or business be carried on by the individual either personally, or through the individual's employee, as that term is defined in sec. 1402(d), or agent, as that term is defined under applicable State law. Because we find that Mr. Redlin was petitioner's agent, we need not decide whether an individual's participation in a CRP contract constitutes a trade or business under sec. 1402(a) where the individual arranges for a third party to perform the obligations required by the CRP contract and the third party is neither an employee nor an agent of the individual.

a. *Caselaw*

This Court previously has addressed the proper treatment of CRP payments for self-employment tax purposes. *Wuebker v. Commissioner*, 110 T.C. 431;[21] *Ray v. Commissioner*, T.C. Memo. 1996–436. However, we are unable to find any case other than *Ray* that addresses whether and to what extent a taxpayer who receives CRP payments is engaged in a trade or business. While there is very little law focusing on whether and to what extent participation in the CRP constitutes a trade or business, *Bot v. Commissioner*, 118 T.C. 138, provides guidance regarding the proper treatment of analogous payments for self-employment tax purposes. Accordingly, we examine each of these decisions and their application to the case at bar.

In *Ray v. Commissioner*, T.C. Memo. 1996–436, the taxpayer was engaged in the trade or business of farming. He then purchased land that had been placed in the CRP by the previous owner. The taxpayer fulfilled the previous owner's obligations under the CRP contract and received CRP payments in exchange. This Court concluded that the taxpayer received the CRP payments in connection with his ongoing trade or business of farming. See also *Hasbrouck v. Commissioner*, T.C. Memo. 1998–249, *aff'd*, 189 F.3d 473 (9th Cir. 1999), in which the Commissioner, on the basis of this Court's decision in *Ray*, conceded that the taxpayers were involved in the trade or business of farming and therefore entitled to the deductions claimed on their Schedules F. In so conceding, the Commissioner noted that the only difference between the two factual scenarios was that the taxpayer in *Ray* was a farmer when he acquired the CRP land,

---

[21] In *Wuebker v. Commissioner*, 110 T.C. 431 (1998), *rev'd*, 205 F.3d 897 (6th Cir. 2000), this Court considered whether the taxpayers were liable for self-employment tax on CRP payments they had received. However, in that Opinion this Court did not address whether the taxpayers were engaged in a trade or business but instead addressed only whether the CRP payments were excluded from the taxpayers' net earnings from self-employment as "rentals from real estate" under sec. 1402(a)(1). In *Wuebker v. Commissioner*, 205 F.3d 897, the U.S. Court of Appeals for the Sixth Circuit addressed whether the CRP payments derived from the taxpayers' farming business but did not decide whether the taxpayers were in the trade or business of farming. We discuss both of the *Wuebker* decisions later in this Opinion. *See infra* pp. 372–374.

whereas the taxpayers in *Hasbrouck* had no prior farming experience.

In *Bot v. Commissioner*, 118 T.C. at 141, this Court addressed the treatment for self-employment tax purposes of payments taxpayers received from an agricultural cooperative (MCP). The taxpayers were retired farmers who purchased MCP cooperative stock and units of equity participation, which "specified the maximum number of bushels of corn the member could be required to produce and deliver to" MCP each year. *Id.* at 141–142. The taxpayers also entered into uniform marketing agreements (UMAs) with MCP. *Id.* at 141. In return, MCP was required under the UMAs to process the corn its members produced and make payments to each individual member equal to at least 80% of the loan value of each bushel of corn delivered by the individual plus a value-added payment, representing "[the] value added to the corn as a result of its processing", a payment from MCP's earnings in accordance with its bylaws, and, in some instances, a storage fee and interest. *Id.* at 143. The taxpayers satisfied their production and delivery obligations using corn that MCP held in its option pool, rather than corn they personally had grown on their farm, and accordingly received only the value-added payments. *Id.* at 142, 144. The Commissioner determined that the value-added payments were includible in the calculation of the taxpayers' net earnings from self-employment. *Id.* at 144.

In deciding whether the taxpayers' actions constituted a trade or business, this Court acknowledged that although the taxpayers had retired from farming, they continued to participate in MCP and their participation constituted a trade or business. *Id.* at 147. In particular, this Court stated:

> Although petitioners retired from daily farming in 1987 and turned over their farm operation to the sons, petitioners nevertheless continued to maintain their membership in MCP from 1987 through at least 1995. As active members of MCP during 1994 and 1995 [the years in issue,] petitioners, either directly or through the sons as their agents, regularly and continuously (1) maintained their status as producers under the UMAs, (2) made decisions regarding how to satisfy their production and delivery obligations * * * under the UMAs, (3) acquired option pool corn which they used to satisfy their production and delivery obligations to MCP several times each year, and (4) sold corn and corn products for profit through MCP. [*Id.* at 147–148; fn. ref. omitted.]

In rejecting the taxpayers' contention that their involvement was too minimal to constitute a trade or business, this Court relied on the fact that the taxpayers "regularly and continuously purchased and sold corn with the intention of making a profit" and purchased additional units of equity over time. *Id.* at 149.

The U.S. Court of Appeals for the Eighth Circuit affirmed the decision of the Tax Court. *Bot v. Commissioner*, 353 F.3d 595. While the Court of Appeals emphasized the unique nature of the cooperative arrangement, the court also distinguished the taxpayers' participation in the cooperative, which constituted a trade or business, from an individual's investment in a corporation or gas well, which was merely a passive investment. *Id.* at 599–600. Unlike a passive investment, the investment in MCP required the taxpayers "to do more than hold the stock or equity units" in order to receive payment. *Id.* at 600.

In *Ray v. Commissioner*, T.C. Memo. 1996–436, this Court relied on the fact that the taxpayer was engaged in the trade or business of farming before and during his participation in the CRP in finding that the CRP payments were includible in his self-employment income. However, we do not read *Ray* to make the taxpayer's engagement in the business of farming before enrolling property in the CRP determinative of whether CRP payments constitute income from self-employment. A taxpayer is not required to have prior experience in a particular trade or business to be permitted deductions under section 162; what is required is that the taxpayer have commenced an activity that qualifies as a trade or business. *Goodwin v. Commissioner*, 75 T.C. at 433.

Like the taxpayers in *Bot v. Commissioner*, 118 T.C. 138, petitioner was an active participant in a payment program (in this case the CRP) who regularly and continuously maintained his status as a participant, maintained the eligibility status of his properties, made decisions regarding how to satisfy his obligations under the CRP contracts, including hiring Mr. Redlin, entering into the 1999 Roberts County CRP, removing a portion of the Grant County property from the CRP, and participating in the emergency haying programs, and he engaged in such activities for profit. Furthermore, because the receipt of CRP payments depended on petitioner's continued maintenance of his land in accordance

with the CRP contracts, his participation in the CRP was not merely a passive investment. Whether petitioner's activities with respect to the CRP constituted farming or simply continuous and regular participation in an activity for profit, we are convinced that petitioner was engaged in a trade or business as defined by section 162. [22]

b. *Notice 2006–108*

On December 5, 2006, the IRS released Notice 2006–108, *supra*, which contained a proposed revenue ruling regarding whether CRP payments were includible in net income from self-employment for purposes of calculating a taxpayer's liability for self-employment tax, and solicited comments concerning the conclusions reached in the proposed revenue ruling. The IRS in Notice 2006–108, *supra*, explained that it had previously issued an announcement, Announcement 83–43, Q&A–3, 1983–10 I.R.B. 29, regarding the self-employment tax treatment of payments made by the USDA under land diversion programs in which it stated that a farmer who receives cash or a payment in kind from the USDA for participation in a land diversion program is liable for self-employment tax on the payments, a conclusion that was consistent with guidance provided in Rev. Rul. 60–32, *supra*, with respect to two earlier land diversion programs. The IRS also noted, however, that Rev. Rul. 60–32, *supra*, states that participants in land diversion programs are not subject to self-employment tax on the payments if the participants do not operate a farm or materially participate in the farming activities. The IRS explained that the conclusion in Rev. Rul. 60–32, *supra*, is relevant only with respect to the exception

--------

[22] In deciding whether a full-time gambler who made wagers solely for his own account was engaged in a trade or business for Federal income tax purposes, the Supreme Court in *Commissioner v. Groetzinger*, 480 U.S. 23, 27 n.7 (1987), stated as follows: "Judge Friendly some time ago observed that 'the courts have properly assumed that the term [trade or business] includes all means of gaining a livelihood by *work*, even those which would scarcely be so characterized in common speech.' *Trent v. Commissioner*, 291 F.2d 669, 671 (CA2 1961)." (Emphasis added.)

The concept of work that the term "trade or business" embodies is incorporated into the CRP contracts, which impose meaningful obligations and duties on petitioner that he had to perform with continuity and regularity in order to receive the CRP payments.

from net income from self-employment provided in section 1402(a)(1) for "rentals from real estate". It cited with approval and relied on the opinion of the U.S. Court of Appeals for the Sixth Circuit in *Wuebker v. Commissioner*, 205 F.3d 897, for the proposition that CRP payments do not fall within the rental income exclusion but pointed out that the taxpayer in *Wuebker* was engaged in the business of farming when he received the CRP payments. Because the IRS had received questions regarding whether CRP payments received by a recipient who is retired or not otherwise actively engaged in farming are subject to self-employment tax, it issued the proposed revenue ruling to respond to those questions.

In Notice 2006–108, 2006–2 C.B. at 119, the proposed revenue ruling holds that CRP rental payments (including incentive payments) from the USDA to (1) "a farmer actively engaged in the trade or business of farming who enrolls land in CRP and fulfills the CRP contractual obligations personally" (taxpayer A) and (2) "an individual not otherwise actively engaged in the trade or business of farming who enrolls land in CRP and fulfills the CRP contractual obligations by arranging for a third party to perform the required activities" (taxpayer B) are both includible in net income from self-employment and are not excluded from net income from self-employment as "rentals from real estate" under section 1402(a)(1). The IRS explained the holdings of the proposed revenue procedure as follows:

> Participation in a CRP contract is a trade or business for both A and B. The participant is obligated to perform a number of activities, including but not limited to tilling, seeding, fertilizing, and weed control. Although more extensive activities are required at the beginning of the contract term than later, the obligation to perform activities extends throughout the ten-year period, giving participation in CRP the continuity and regularity necessary to be considered a trade or business. Also, both A and B enrolled land in the CRP program to earn a profit. Participation in a CRP contract meets the criteria to be a trade or business irrespective of whether the participant performs the required activities personally or arranges for his obligations to be satisfied by a third party. Thus, the trade or business treatment is the same for A and B even though A meets the CRP requirements for maintenance of the land himself whereas B arranges for someone else to do it. Furthermore, the CRP meets the criteria to be a trade or business based on the activities required directly under the program and without being affected by whether the participant is otherwise engaged in farming or any other

trade or business. * * * Thus, for both A and B, the CRP rental payments are includible in their net income from self-employment. [*Id.*, 2006–2 C.B. at 1120.]

Although we are not obligated to defer to the IRS' interpretation of a statute as reflected in administrative pronouncements such as Notice 2006–108, *supra*, *see, e.g.*, *Tax Analysts v. IRS*, 416 F. Supp. 2d 119, 125–126 (D.D.C. 2006), the notice sets forth the IRS' interpretation of the statute and, consequently, "may provide evidence of the proper construction of the statute", *Wells Fargo & Co. & Subs. v. Commissioner*, 224 F.3d 875, 886 (8th Cir. 2000) (discussing the precedential value of private rulings), *aff'g in part, rev'g in part Norwest Corp. & Subs. v. Commissioner*, 112 T.C. 89 (1999); *see Nelson v. Commissioner*, 568 F.3d 662, 665 (8th Cir. 2009) (adopting the framework set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), in considering what weight to give revenue rulings), *aff'g* 130 T.C. 70 (2008); *see also Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 762 (7th Cir. 2003) (discussing the precedential value of IRS notices); *Esden v. Bank of Boston*, 229 F.3d 154, 168–169 (2d Cir. 2000) (discussing the precedential value of IRS notices). In this instance, we conclude that the IRS' analysis of the CRP and the payments made thereunder and the classification of the CRP payments for self-employment tax purposes as set forth in Notice 2006–108, *supra*, while not controlling, are nevertheless well grounded and consistent with the analysis set forth herein.

### c. *Congressional Intent Regarding CRP Payments*

Several attempts have been made to convince Congress to enact a blanket exclusion for self-employment tax purposes with respect to CRP payments, but Congress did not enact proposed legislation amending section 1402 to exclude CRP payments from self-employment tax entirely. *See* 153 Cong. Rec. 9170–9171 (2007); 149 Cong. Rec. 15950–15951 (2003); 147 Cong. Rec. 1776–1783 (2001); 133 Cong. Rec. 8557 (1987). Congress did, however, enact a partial exclusion. Following the issuance of Notice 2006–108, *supra*, Congress in 2008 amended section 1402(a)(1) to exclude CRP payments from the calculation of a taxpayer's net earnings from self-employment where the taxpayer is receiving Social Security

retirement or disability payments.[23] Food, Conservation, and Energy Act of 2008, Pub. L. No. 110–246, sec. 15301(a), 122 Stat. at 2263. If we were to interpret section 1402 to exclude entirely CRP payments from the calculation of net earnings from self-employment as petitioners contend we should, such an interpretation would render the enactment of the 2008 exclusion meaningless. By enacting only a limited exclusion with respect to taxpayers receiving Social Security retirement or disability payments who are also receiving CRP payments, Congress has evidenced an intent not to exclude all CRP payments in calculating a taxpayer's net earnings from self-employment under section 1402.

Having found that petitioner, either individually or through his agent, was engaged in a trade or business during the years at issue, we examine what would appear to be self-evident—whether there was a nexus between the CRP payments petitioner received and his business activity.

### B. *"Derived From" Requirement*

Petitioner received the CRP payments as consideration for fulfilling his obligations under the CRP contracts for the years in issue. Such consideration provides the required nexus between the CRP payments and his trade or business of participating in the CRP during the years in issue. *See Bot v. Commissioner*, 353 F.3d at 600; *see also Wuebker v. Commissioner*, 205 F.3d at 902–903 (holding that CRP payments had a direct nexus to the taxpayers' trade or business of farming); *Ray v. Commissioner*, T.C. Memo. 1996–436.

### II. *Petitioner's Alternative Argument Under Section 1402(a)(1)*

Section 1402(a)(1) provides that "rentals from real estate" shall be excluded from the calculation of net earnings from self-employment. Petitioner alternatively contends that the CRP payments are excluded from his net earnings from self-employment under section 1402(a)(1) because the payments

---

[23] The Staff of the Joint Committee on Taxation has noted that CRP payments generally constitute self-employment income, except in the case of taxpayers who receive Social Security retirement or disability benefits. *See* Staff of J. Comm. on Taxation, Description of the Social Security Tax Base 22 (J. Comm. Print 2011).

constituted rental income.[24] Respondent contends that petitioner is not eligible for the "rentals from real estate" exception under section 1402(a)(1) because petitioner did not receive the CRP payments in exchange for the USDA's occupancy or use of the South Dakota properties but instead received the payments as compensation for conducting his farming operation in an environmentally friendly manner. Accordingly, we must decide whether the CRP payments constituted "rentals from real estate" within the meaning of section 1402(a)(1).

Neither section 1402 nor any other self-employment tax provision of the Code defines the term "rentals from real estate". *See also Wuebker v. Commissioner*, 205 F.3d at 903. However, this Court has stated that the exception for "rentals from real estate" must be "narrowly construed." *Johnson v. Commissioner*, 60 T.C. 829, 833 (1973); *see also Delno v. Celebrezze*, 347 F.2d 159, 165 (9th Cir. 1965). Ordinarily, rent is defined as compensation "for the use or occupancy of property". *Wuebker v. Commissioner*, 205 F.3d at 904.

In *Wuebker v. Commissioner*, 110 T.C. at 437, the taxpayers argued that the CRP payments they received constituted "rentals from real estate". In addressing the taxpayers' contention, this Court first noted that rent ordinarily is defined "as compensation for the occupancy or use of property." *Id.* at 436. The Court went on to find that the CRP statute, the applicable regulations, and the CRP contract identified the payments as rental payments. *Id.* at 438. After briefly discussing the taxpayers' obligations under the CRP contracts, this Court concluded that

> [i]n imposing the above-described restrictions on the use of the land, the primary purpose of the CRP contract was to effectuate the statutory intention of converting highly erodible croplands to soil conserving uses. The services that petitioner was required to perform over the contract term included maintaining the vegetative cover, controlling weeds, insects, and pests on the land, and fulfilling certain reporting requirements. These service obligations were not substantial and were incidental to the primary purpose of the contract. Thus, the CRP payments represented compensation for the use restrictions on the land, rather than remuneration for petitioner's labor. * * * [*Id.*]

---

[24] In so arguing, petitioner relies, in part, on the fact that the CRP contracts identified the payments as "rental payments".

Accordingly, the Court held that the CRP payments qualified as "rentals from real estate" under section 1402(a)(1). *Id.*

The U.S. Court of Appeals for the Sixth Circuit reversed this Court's decision, holding that the CRP payments were not "rentals from real estate" within the meaning of section 1402(a). *Wuebker v. Commissioner*, 205 F.3d at 903–905. The Court of Appeals began its analysis by stating that generally, rental payments constitute consideration paid for either the use or occupancy of property. *Id.* at 904. The Court of Appeals quickly dispensed with the issue of whether the CRP payments constituted consideration for the occupancy of the taxpayers' property, noting that the USDA's access was limited to inspections of the property to determine whether the taxpayers were in compliance with their CRP contract. *Id.*

The Court of Appeals acknowledged that the second issue, i.e., whether the CRP payments constituted consideration for the use of the taxpayers' property, presented a much closer question. *Id.* However, the Court of Appeals ultimately decided that the USDA did not make the CRP payments in exchange for the use of the taxpayers' property:

> Citing the many objectives of the CRP, such as the reduction of soil erosion and the protection of the nation's long-term food production capabilities, the * * * [taxpayers] assert, and the dissent agrees, that the government is "using" the land in question. We believe, however, that such an argument impermissibly stretches the plain meaning of the term "use," especially in light of the narrow construction required of the rentals-from-real-estate exclusion. * * * Although it is true that the * * * [USDA] is seeking, and receiving, a public benefit by conserving lands enrolled in the CRP, the * * * [taxpayers] continue to maintain control over and free access to their premises. The dissent reasons that, because the government "greatly reduced the range of uses to which the * * * [taxpayers] could put their property," it exercised a level of control akin to "use." We remain unpersuaded, however, that the restrictions imposed by the * * * [USDA] on a farmer's use of his own land somehow translate into "use" by the * * * [USDA] itself.
>
> The essence of the program is to prevent participants from farming the property and to require them to perform various activities in connection with the land, both at the start of the program and continuously throughout the life of the contract, with the government's access limited to compliance inspections. Given this arrangement, we disagree with the Tax Court's determination that the * * * [taxpayers'] maintenance obligations were legally insignificant.
>
> [*Id.* at 903–905.]

In so holding, the Court of Appeals also stated that although the CRP statute, the applicable regulations, and the contract referred to the amounts as rental payments, such references did not dictate a conclusion that the CRP payments fell within the "rentals from real estate" exclusion. *Id.* at 904.

Following the decision in *Wuebker*, the IRS issued Notice 2006–108, *supra*, proposing a revenue procedure holding that "CRP rental payments are not payments for the right to use or occupy real property. CRP rental payments are made in exchange for conducting activities that meet the commitments of a CRP contract. Therefore, CRP rental payments are not * * * rentals from real estate." Following the issuance of Notice 2006–108, *supra*, in 2008 Congress amended the section 1402(a)(1) exclusion for "rentals from real estate", effective for CRP payments received after December 31, 2007, to exclude from the calculation of net earnings from self-employment CRP payments made to taxpayers who are receiving Social Security retirement or disability payments. However, Congress neither enacted a blanket exclusion with respect to CRP payments nor evidenced any disagreement with the analysis of the Court of Appeals for the Sixth Circuit in *Wuebker v. Commissioner*, 205 F.3d 897.

Given the history recited above and our obligation to reconsider our position following the reversal of our decision in *Wuebker* by the Court of Appeals for the Sixth Circuit, we agree with and adopt the analysis of the Court of Appeals in *Wuebker v. Commissioner*, 205 F.3d at 903–905, regarding whether, under section 1402(a)(1), CRP payments are excluded from the calculation of net earnings from self-employment as "rentals from real estate". Under the CRP, a participating owner who enrolls land in the program does not relinquish control of the land to the USDA, and the USDA does not engage in any activities with respect to the land that constitute "use" of the land by the USDA, applying a commonsense definition of the term. *See, e.g.*, Merriam Webster's Collegiate Dictionary 1297 (10th ed. 2002) ("to put into action or service: avail oneself of: EMPLOY"). Taxpayers participating in the CRP "maintain control over and free access to their premises". *Wuebker v. Commissioner*, 205 F.3d at 904. Although the CRP restricts the taxpayer's use of the property, i.e., the taxpayer's ability to plant certain crops and

engage in certain activities with respect to the enrolled property, which the taxpayer agrees to in exchange for consideration, the Government does not take possession of the property or acquire the right to use the property for its own purposes.

Furthermore, we agree with the finding of the Court of Appeals for the Sixth Circuit in *Wuebker*, that a taxpayer's activities with respect to the CRP contract are legally significant. *Id.* As discussed *supra* pp. 363–364, a taxpayer who participates in a CRP contract, either individually or through an agent or employee, must engage in property maintenance activities for the benefit of the enrolled properties with regularity and perform periodic administrative and reporting duties to satisfy his obligations under the contract and receive CRP payments. The contractual obligations are substantial and require more than de minimis action by the taxpayer or his agent to satisfy them.

Additionally, we note that the activities required of petitioner under the CRP contracts were not limited to maintenance activities and instead included the performance of duties not "usually or customarily rendered in connection with" the mere rental of farmland. *Johnson v. Commissioner*, 60 T.C. at 831–832 (holding that boat stall rental payments did not constitute "rentals from real estate" where the taxpayer also provided various services at no additional charge, including providing gas and oils, selling sundry items, making arrangements for boat repairs, recharging batteries, loaning boating equipment, providing fishing tips, and checking for overdue boats); *see also Delno*, 347 F.2d at 165 (interpreting an identical provision of the SSA and finding that the individual's activities with respect to the property were not those usually rendered in connection with the rental of property).

Although the CRP statute, the regulations, and the contracts refer to the payments as rental payments, we do not find that the use of the term "rental" dictates a conclusion that the payments constituted "rentals from real estate". *See, e.g.*, *Wuebker v. Commissioner*, 205 F.3d at 904 (noting that Congress qualified the use of the term "rent" with respect to CRP payments by providing that the CRP payments would be made "in the form of rental payments"). We are not required to treat as rental payments all payments labeled

"rent". Instead we may examine the substance of so-called rent payments to decide whether the payments actually constituted rent or some other type of income. *See Opine Timber Co. v. Commissioner*, 64 T.C. 700, 709–711 (1975), *aff'd without published opinion*, 552 F.2d 368 (5th Cir. 1977). The CRP payments petitioner received appear to be proceeds from his own use of the land rather than rent he received for permitting another entity to use his land. *See, e.g.*, *Webster Corp. v. Commissioner*, 25 T.C. 55, 61 (1955), *aff'd*, 240 F.2d 164 (2d Cir. 1957); *Harding v. Commissioner*, T.C. Memo. 1970–179 (holding that conservation reserve program payments "are in the nature of receipts from farm operations in that they replace income which producers could have expected to realize from the normal use of the land devoted to the program"); Rev. Rul. 60–32, *supra*. Such a conclusion is consistent with our holding that the "rentals from real estate" exception should be narrowly construed. *Johnson v. Commissioner*, 60 T.C. at 833.

We hold that the CRP payments at issue do not constitute "rentals from real estate" within the meaning of section 1402(a)(1) and are not excluded from the calculation of petitioner's net earnings from self-employment for 2006 and 2007. In so doing, we overrule our holding in *Wuebker v. Commissioner*, 110 T.C. 431.

III. *Conclusion*

We sustain respondent's determination that the CRP payments petitioner received in 2006 and 2007 must be included in the calculation of his net earnings from self-employment under section 1401 and hence are subject to self-employment tax. The CRP payments are not excluded from this calculation by virtue of section 1402(a)(1) because the CRP payments do not constitute "rentals from real estate". Because we find that the CRP payments are not "rentals from real estate", we need not reach the issue of whether the CRP payments constituted includible farm income.

We have considered all of the parties' arguments. To the extent not discussed above, we find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

COLVIN, HALPERN, FOLEY, VASQUEZ, GALE, GOEKE, WHERRY, KROUPA, HOLMES, GUSTAFSON, MORRISON, KERRIGAN, BUCH, and LAUBER, *JJ*., agree with this opinion of the Court.

PARIS, *J*., did not participate in the consideration of this opinion.